Clement v. Insurance Co.

CLEMENT v. INSURANCE CO.

(*Jackson.* April 16, 1898.)

1. LIFE INSURANCE. *Incontestability.*

A stipulation that a life policy shall be incontestable after one year, if the premiums are paid, operates to preclude the insurer, after the year has elapsed and the premiums have been paid, from denying his liability to the beneficiary, or to a *bona fide* assignee, upon the ground that the policy was obtained by fraudulent misrepresentation, or upon any other ground going to the orginal validity of the policy. (*Post, pp. 26–30.*)

2. SAME. *Same.*

The stipulation that renders a life policy incontestable after one year, if the premiums are paid, so far limits another provision therein, or the general rule of the law, that fraud vitiates the policy, as to require the insurer to discover the fraud and seek relief within the year. (*Post, pp. 29, 30.*)

Cases cited: 43 Hun, 61; 11 Exch., 493; 118 N. Y., 237; 6 L. R. A., 731; 16 Am. St. Rep., 749; 111 Ind., 462; 60 Am. Rep., 707.

3. SAME. *Admissibility of evidence to impeach policy for fraud.*

Evidence to impeach a life policy for fraud in its procurement is not admissible to defeat the suit of the beneficiary, or of a *bona fide* assignee, when the policy, by its terms, has become incontestable; but such evidence is competent, in a suit upon an incontestable policy by an assignee, where it is insisted that the procurement and transfer of the policy were parts of a fraudulent scheme to evade the law forbidding wagering policies. (*Post, pp. 30, 31.*)

4. SAME. *Proof of payment of premiums.*

Under a life policy requiring payment of premiums to be made at the home office, or to an agent producing a receipt signed by an officer of the company and countersigned by himself, the payment is sufficiently proved by evidence of the admissions of one who was held out and recognized as agent of

Clement *v.* Insurance Co.

the company, that he, as general agent of the company, received the premiums, and gave the required receipt. (*Post, pp. 31–33.*)

5. SAME. *Assignment of policy.*

The assignment of a life policy, if not forbidden by its terms, made in good faith by a beneficiary legally entitled to its benefit, is valid, although the assignee had no insurable interest in the life of the deceased; and if the policy had become incontestable, the assignee is entitled to the benefit of that quality. (*Post, p. 36.*)

6. SAME. *Consideration for assignment.*

It is a sufficient consideration for the *bona fide* assignment of an $8,000 life policy, that the assignee paid the assured twenty-five dollars cash, and assumed to pay all premiums on the $8,000 policy, and on a $2,000 policy taken out for the benefit of assured's wife. (*Post, pp. 33–35.*)

7. SAME. *Wagering policy.*

A life policy is void, as a wagering contract, by which one person, for his own benefit, insures the life of another in whom he has no insurable interest. (*Post, pp. 35, 36.*)

8. SAME. *Same. Example.*

The transaction is void, as a wagering contract, and is not protected by the clause rendering a life policy incontestable, where a third person, having no insurable interest in the life of the assured, conspires with him to evade the laws against wagering policies, and procures and pays for a policy to be issued in assured's name, and then assigned to himself. (*Post, pp. 36–39.*)

Cases cited: Insurance Co. *v.* Hamilton, 5 Sneed, 269; 25 L. R. A., 628, note.

FROM OBION.

Appeal from Chancery Court of Obion County. JNO. S. COOPER, Ch.

CALDWELL & LOWE for Clement.

TURLEY & WRIGHT and MOORE & WELLS for Insurance Co.

WILKES, J. This is an action upon a policy of insurancce for $8,000 upon the life of Mattie Lee Wright. The policy was issued on October 11, 1893, and was payable to the executors, administrators, and assigns of the insured. On October 19, 1893, it was assigned to R. H. Clement and W. B. Kerr upon consideration that they pay the premiums as they should accrue, as well as the premiums upon a policy of $2,000 issued simultaneously by the assured upon his life for the benefit of his wife, and the further consideration of $25 paid to the assured himself. The assured died December 27, 1894, or one year two months and sixteen days after the policy issued, he being about twenty-six years of age. After his death, W. B. Kerr assigned $2,228.10 of his part and interest in the policy to the Jerome Hill Cotton Company, to satisfy an attachment which had been levied upon it, and afterwards, but before this suit was instituted, assigned the remainder of his interest under the policy to his two sons, the complainants, W. A. and E. B. Kerr.

Upon the hearing of the cause in the Court below, upon a voluminous record and a vast volume of proof, the Chancellor was of opinion that complainants were not entitled to recover upon the policy, nor to any relief, and he dismissed the bill at

their cost, and they have appealed and assigned errors.

The learned Chancellor, in his decree, set out in full his finding of facts and conclusions of law thereon. We are satisfied, from an examination of the entire record as it is presented, that the Chancellor was, in the main, correct in finding the facts as follows:

When the policy was issued, the insured was not a fit and suitable subject for insurance, because of ill health and bodily infirmities of a serious character, which was well known to him, and concealed by him in making his application, and he procured the policy by fraudulent misrepresentations as to his physical condition. It also appears that prior to the delivery of the policy, and doubtless prior to the application, the said R. H. Clement and W. B. Kerr had agreed with the insured, that, for the consideration heretofore stated, he would transfer the policy for $8,000 to them, and the policy was procured in conformity to, and in pursuance of, such agreement, said Clement and Kerr paying the cash premium to the agent, but not until after the transfer was made and policy delivered to them. The terms of the transfer recite that Clement and Kerr were creditors of the insured, but such does not appear to be the fact from the record, except so far as that relation may be said to have arisen out of the agreement referred to, nor were they in any way related to him, nor did they have any insurable interest in the

life of the deceased, but had knowledge of his physical condition. The Chancellor was therefore of opinion that the transaction was a gambling or wagering contract upon the life of the insured, that to recognize or enforce it would be contrary to sound public policy, and that the subassignees or transferees of W. B. Kerr could stand upon no other or higher ground than he could.

Unquestionably the findings of the Chancellor are correct, and his conclusions correct, upon the record as presented to us, unless they are controlled and neutralized by the provisions of the policy in regard to the right of the company to contest its liability in case of death. The provision referred to is as follows:

"*Incontestability.*—After this policy shall have been in force one full year, if it shall become a claim by death, the company will not contest its payment, provided the conditions of the policy as to payment of premiums have been observed."

The rights of the parties are thus made to turn upon the force, effect, and extent of this provision in the policy. It must be apparent from the outset that this provision was intended to have some material effect, and was not inserted as a matter of form. No more tempting provision to an applicant could be introduced into a policy of life insurance than this one, which guaranteed to the applicant that his policy should not be contested after the expiration of one year, provided the premiums were paid.

Premiums upon life policies are often paid at a great sacrifice, and one of the most disturbing and unsatisfactory features of the insurance contract is the fact that, after these sacrifices and payments have been made for a number of years, and the insured has died, so that his testimony and perhaps that of others has been rendered unavailable by the lapse of time and the occurrence of death, instead of receiving the promised reward, the beneficiary will be met with a contest and a lawsuit to determine whether the insurance ever had any validity or force. Hence it has become an almost universal practice with insurance companies to provide against any contest or forfeiture of their policies after a certain length of time, greater in some cases and less in others.

The provision in this case is very broad in its terms. There is only one condition upon which the validity of the policy can be questioned, after the lapse of a year, and that is the nonpayment of premiums. The meaning of the provision is that if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity. No reasonable construction can be placed upon such provision other than that the company reserves to itself the right to ascertain all the facts and matters material to its risk, and the validity of their contract for one year, and if, within that time, it does not ascertain all the facts, and does not cancel and rescind the

contract, it may not do so afterward upon any ground then in existence.

The practical and intended effect of the stipulation is to create a short statute of limitation in favor of the insured, within which limited period, the insurer must, if ever, test the validity of the policy.

It has been held that an agreement limiting the time within which an action may be brought upon a policy of insurance by the beneficiary, is not against public policy, and may be enforced, though less than the usual time imposed by law has been fixed. If this be so, it is difficult to see why a similar limitation upon the right of the insurer to contest should be against public policy, and why it should not be enforced by the Courts.

. It is said, however, that fraud appearing in the origin of the contract must, as in any other case, render it null and void from the beginning. It is true that fraud vitiates all agreements and undertakings based upon it, and they may be set aside at the instance of the party defrauded. So, in this case, fraud in obtaining the policy would vitiate it at the option and upon the motion of the party defrauded, but, under the provision in question, the party must within the year exercise his right to repudiate and rescind it. The effect of this agreement not to contest is to put the company in the attitude of being unable to set up any fraud or false swearing in obtaining the policy, or any other defense

to it, save the one excepted, so far as its original validity is concerned. Unless the language be thus construed, it is impracticable to put any reasonable interpretation on it. Unless it is the object and purpose of the provision to cut off all defenses arising out of the false statements of the applicant to obtain it, it is difficult to see what practical benefit the insured is to derive from it. , , )

It has been well said: "The effect of the provision is to prevent the insurer from interposing as a defense the falsity of the representations of the insured, which is a fraud. But it does not prevent abandonment, rescission, and cancellation of the contract for such fraud, provided the action for that purpose is brought within a year." It is virtually saying to the insured that "I will take one year in which to ascertain whether your representations are false or not, and whether you have been guilty of any fraud in obtaining the contract, and if within that period I cannot or do not detect such falsity and fraud, I will obligate myself to make no further inquiry into these matters, and to make no defense on account of them."

It has also been properly said: "Such a stipulation ought to be an incentive to the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy issued, while the matter is fresh, and thus it operates fairly between the parties. The witnesses are all alive, and the exact truth can, if ever,

be ascertained, and the stipulation prevents the insurer from laying by and receiving the premiums during the life of the insured, and after his death, when the good faith and the truth of his representations cannot be supported by his own oath and strengthened by his own efforts and superior knowledge, contesting the policy upon the ground that the insured's representations were false.    It is true there is in the policy a stipulation that fraud shall vitiate it, but this is not inconsistent with the further requirement that the insurer must set up the fraud during the time limited." *Wright* v. *Mut. Ben. Asso.*, 43 Hun, 61; *Wood* v. *Dwarris*, 11 Exch., 493; *Wright* v. *Mut. Ben. Asso.*, 23 N. E. Rep., 186 (118 N. Y., 237; 6 L. R. A., 731; 16 Am. St. Rep., 749); *Kline* v. *Nat. Ben. Asso.*, 111 Ind., 462; 60 Am. Rep., 707.

Fraud is always required to be set up promptly when discovered, or it may be treated as waived, and the effect of this stipulation is that the insurer must exercise due diligence to discover such fraud within the year, and, if it fails to do so, it will treat it as waived, and no inquiry will be made or allowed into such matters.    It clearly appears, from the record in this case, that the company in one year could have discovered all the facts now disclosed in the proof relating to this question.

Objection was made by the complainant to any testimony relating to the truth or falsity of the representations made or fraud practiced by the as-

Clement *v.* Insurance Co.

sured or the transferees in obtaining this policy, but such objections were overruled, and much testimony pro and con was taken on this point, and this is now assigned as error. We are of opinion this would be error if the present suit was being prosecuted by the assured's representatives or any *bona fide* assignee of the assured. To give any effect to the stipulation, if the suit were in the interest of the original beneficiary or his *bona fide* assignee, the company must be estopped from inquiring into any matter involved in the original validity of the policy. But when the suit is brought by a transferee, and the Chancellor was of opinion that such transferee did not hold in good faith, and that the transfer was but a mere evasion of the rule against wagering policies, then the evidence was admissible on the question of fraud or good faith on the part of the transferee.

It is said by the defendant company there is no sufficient proof that the premium due one year after the policy issued was ever paid to the company.

The bill alleges that the premium was paid promptly when due, and a receipt is filed for the same and made an exhibit to the bill; and again that all premiums have been promptly paid on the policy when due, and these payments were made under the agreement by the assignees, R. H. Clement and W. B. Kerr.

The contest is not that the premium was not paid, but that there is no evidence that such pay-

ment was made to the company or any authorized agent of the company. The answer neither admits nor denies the payment, but calls for strict proof of the same if deemed material. The alleged receipt, filed with the bill as an exhibit, is in the words and figures following:

"NEW YORK LIFE INSURANCE CO.,

"346 & 348 Broadway, New York.

"Received $164, being the annual premium due October 11, 1894, upon policy No. 565,543.

"JOHN A. MCCALL, *President.*

"Countersigned by

"WM. H. WOOD, *Cashier.*"

On the back of this receipt there is printed a "Notice to Policy Holders," and one clause of the notice is as follows: "All premiums are due and payable at the home office of the company unless otherwise agreed in writing, but any premium may be paid to an agent producing a receipt therefor signed by the president, vice president, second vice president, actuary or secretary, and countersigned by such agent." A similar provision is found in the policy itself. Wm. H. Wood was not examined, but it was attempted to be shown that he stated that he was the general agent of the company at Memphis, where it had a branch office; that he was authorized to receive premiums and give receipts; and that he did receive the premium as stated, and executed the receipt. This evidence was objected to

on the ground that agency cannot be proven by the statements of the party assuming to act as such. The objection was overruled by the Chancellor, and to his ruling exception was taken. It is now assigned as error by the company · that the Chancellor improperly admitted this testimony, and the same should have been excluded. We think there is ample evidence that Wood was held out and recognized as the general agent of the company, and that he had in his possession the receipt of the company signed by its president, Jno. A. McCall, and delivered this when the payment was made.

In regard to the point made that the assignees, R. H. Clements and W. B. Kerr, had no insurable interest in the life of the deceased, and the transaction as to them was invalid and void, it is necessary to repeat that the policy was not made payable to them when originally issued, but to the executors, administrators, and assigns of the insured. Within a few days thereafter, it was regularly assigned to said Clements and Kerr. The manner and form prescribed by the policy and the assignment · or transfer was made known to and recognized by the company by receiving and retaining a copy of the transfer. A policy for $10,000 had been previously procured in another company, payable to Clements and Kerr, but in which the wife was to have a beneficial interest to the extent of $2,000; but this policy was not acceptable to Clements and Kerr, and they declined to receive it, and the ap-

17 P—3

plication was then made for the present policy, pay-
able to the assured, with an agreement that he would
transfer it to Clements and Kerr.   The insured, be-
fore his death, executed a last will and testament,
in which he recited that he was indebted to Clem-
ents and Kerr prior to October 1, 1893; that the
policy had been issued to him and transferred to
them on October 19, 1893, and the transfer ac-
cepted by the company November 14, 1893; and in
his last will he directs that the proceeds of the pol-
icy be paid to them in the event of death.

As before stated, neither Clements nor Kerr were
related in any way to the insured, nor were they
creditors, nor did they give any consideration for the
transfer, except the twenty-five dollars paid the in-
sured, and undertaking to pay the premiums on the
transferred policy, as well as the $2,000 policy is-
sued at the same time with the policy in contro-
versy upon the assured's life in favor of his wife,
and they had knowledge of the assured's physical
condition.   If this transfer is not authorized by the
policy or by any rule of law, or is opposed to any
sound ground of public policy, we cannot see that
such infirmity can be in any way cured by the pro-
vision not to contest.   That provision relates to the
issuance of the policy and the representations made
to obtain it, and not to any subsequent transfer, dis-
position, or assignment of the policy.   As to these
matters, the stipulation has no reference or effect.
It relates only to matters arising between the insurer

and the insured, and not to matters in which third persons are concerned. The only provision in the policy as to assignments is the following:

"Any assignment of this policy must be made in duplicate, and both copies must be sent to the home office, one of them to be retained by the company. The company has no responsibility for the validity of any assignment."

There is nothing in the policy as to who may be beneficiaries, nor as to whom assignments and transfers may be made, but it is clearly indicated that transfers and assignments may be made at the risk of the parties. We are therefore relegated to the general law of insurance to determine whether such transfer and assignment can be sustained. We think there can be no question but that the consideration for the transfer is sufficient as to amount and value, if it can be sustained on other grounds, and the only question is whether such transfer to one or more third persons having no insurable interest can be sustained under the rules of law and upon grounds of sound public policy. While the authorities are in hopeless conflict, the weight of authority is that one who takes out a policy upon the life of another, paying the premiums therefor himself, must have an insurable interest in the life of that other, or the policy will be a mere wager policy, upon which the party to whom it was issued cannot recover. See authorities collated in 3 Am. & Eng. Enc. L. (2d Ed.), 929.

But the weight of authority is that when the insured contracts directly with the insurer, paying the premiums himself, he may designate as beneficiary one who has no insurable interest in his life. *Ib.*, 959.

So, also, the weight of authority is that when a policy has once been issued to a beneficiary legally entitled, he may assign it to another who has no insurable interest, either by a transfer in his lifetime or by a last will and testament. *Ib.*, 1025.

But, while this is true, the transfer and assignment must be made in good faith, and not as a mere colorable evasion of the provision in regard to wagering contracts and in order to validate or legalize the same. *Ib.*, 1025, and notes; *Mutual Protection Ins. Co.* v. *Hamilton*, 5 Sneed, 269; *Nye* v. *Grand Lodge*, 9 Ind. App., 131; *Rittler* v. *Smith*, 70 Md., 261; *Fairchild* v. *N. E. Mut. Life Asso.*, 51 Vt., 613; *Bursinger* v. *Watertown Bank*, 67 Wis., 75; *Henlein* v. *Imperial Life Ins. Co.*, 25 L. R. A., 627, note; *Carpenter* v. *U. S. Life Ins. Co.*, 161 Pa. St., 9; *Fitzpatrick* v. *Hartford Life Ins. Co.*, 56 Conn., 116; *Olmstead* v. *Keyes*, 85 N. Y., 593; *Clark* v. *Allen*, 11 R. I., 439.

We think the facts in this case show that, while this policy was taken out by the assured, payable to his executors, etc., it was done under a pre-existing agreement with Clement and Kerr that they would pay the premiums and the other considerations named, and have the benefit of the policy,

Clement v. Insurance Co.

and the assignment to them was in furtherance of this agreement, and it was therefore a wagering policy. But it is said that if this be true, still the complainants can take under the will of the assured. It is doubtless true that anyone by will may bequeath the proceeds of a life policy, payable to himself or his executors or administrators, to whom he pleases, and the fact that the legatee has no insurable interest will not defeat his right to receive under the will. But the parties complainant do not sue or seek to recover in this case as legatees or under the will of the insured. On the contrary, they expressly state, when asked the question, in making proof of death, under what title they claim, that they claim under the transfer and assignment. The provision in the will appears clearly to be an afterthought, an act to strengthen, consummate, and support the transfer, and was in furtherance of the original fraudulent contrivance and agreement to vest an interest in complainants. While we think the party procuring a policy is entitled to rely upon a provision against contest, and may transfer this right to anyone, whether having an insurable interest or not, provided he takes in good faith, we can see no reason for extending the benefit to one who, by fraud commenced before and consummated after the policy issues (by means of an unauthorized and illegal transfer), seeks to reap the same benefit. This would be to allow an easy evasion of the rule against the validity of wagering contracts. *Henlein*

*v.* *Imperial Life Ins. Co.*, 25 L. R. A., 628, note.

It is argued, however, that the clause agreeing not to contest must have the effect to preclude any inquiry into the transfer and also the right of the transferee to take under the policy. We are of opinion, however, that the clause does not go to this extent and cannot have this effect. It is intended to cut off inquiry into the truth of the statements made by the assured in the application, and other matters going to the original validity of the policy, but not to any subsequent disposition of the policy, and the company expressly disclaims any responsibility for the validity of any assignment. There is nothing in this holding inconsistent with the ruling in the case of *Wright* v. *Mut. Ben. Asso. of America*, above referred to. See 6 L. R. A., 731; 16 Am. St. Rep., 749.

In that case, Houghton, the original beneficiary, was a creditor of Wright, and had, therefore, an insurable interest in his life, and the policy was not, therefore, a wagering policy. After the death he assigned and transferred his interest in the policy to the widow of the insured, and the suit was brought in her name. The Court held that she might re cover the entire amount of the policy and adjust the rights of Houghton out of the proceeds, and make such other payments as equity demanded out of the proceeds. But there was no evidence of any fraud, either in the original issuance of the policy or in

its subsequent transfer, and the whole matter appears to have been done in the utmost good faith and with no purpose of carrying out a wagering policy. While the Court is disposed to give to the assured, and parties taking under him in good faith, the full benefit and advantage of the noncontestable clause, by shutting off inquiries into the truth or falsity of the statements made in the application, and this because of the contract between the parties, it can see no reason why the like advantage and benefit should be extended to one who has no insurable interest in the assured, who does not take or claim in good faith, and whose entire connection with the matter is shown to have been for a speculative and fraudulent purpose, and no sound public policy can be subserved by so holding, but on the contrary, such holding would sanction wagering insurance contracts, to the great detriment of the public morals and public good. We are therefore of opinion the decree of the Chancellor is correct in its results, and it is affirmed, and the bill dismissed at complainant's cost.