INSURANCE Co. *v.* Fox.

(*Nashville.* February 2, 1901.)

1. INSURANCE, LIFE. *Incontestability of policy.*

A life policy is incontestable on account of any false or fraud-. ulent statement or representation contained in the application or medical examination, upon faith of which it was issued, where this provision occurs in the conditions indorsed upon it, to wit: "Except as hereinbefore provided, this policy shall be incontestable for any cause except misstatement of age." The exception to incontestibality refers to and includes only the matters indorsed on the policy that precede the clause quoted, and does not embrace anything contained in the application or medical examination. (*Post, pp. 355–357.*)

2. SAME. *Same.*

A provision or stipulation in a life policy that it shall· be incontestable on account of any false or fraudulent statement or representation contained in the application or medical examination upon faith of which it was issued, is not void as being against public policy. (*Post, pp. 352–355.*)

Case cited: Clements *v.* Insurance Co., 101 Tenn., 22.

3. CHARGE OF COURT. *Proximate cause.*

The charge of the Court is correct and sufficient, without addition, which, in substance and ·effect, instructs the jury that there càn be no recovery upon a life policy if voluntary starvation caused or hastened the assured's death, àlthough he may have been at the same time fatally ill with scurvy, of which he would have eventually died. (*Post, pp. 357, 358.*)

FROM RUTHÉRFORD.

Appeal in error from Circuit Court of Rutherford County. W. C. HOUSTON, J.

PALMER & RIDLEY for Insurance Co.

J. E. RICHARDSON for Fox.

WILKES, J. This is an action upon a life insurance policy. It is brought by Mrs. Susie E. Fox, the widow of the assured and the beneficiary named in the policy. It was issued September 10, 1898, and the insured died December 12, 1898, or about three months after the issuance of the policy. The cause was tried before a jury in the Court below, and there was judgment for $2,078.35, the amount of the policy, and the company has appealed and has assigned errors.

Passing over the details of the pleadings, the principal question presented to this Court is whether, under the terms and stipulations of the policy, fraud perpetrated by the insured in procuring the policy is available as a defense to a recovery upon it. Upon this feature the Court charged the jury as follows:

"It [the company] further files several pleas alleging fraud in procuring the policy, and alleging that the assured, Jno. E. Fox, falsely answered questions propounded to him in his application for insurance, to wit:

"As to the sanity or insanity of his father, himself, and his sister, and as to his previous illness, as set out in its pleas. You are instructed that if you find the policy introduced in

evidence to be the contract of insurance, then the defendant would be estopped from relying upon such defenses, and would be held to have waived them."

It is insisted this instruction was erroneous, and it presents the question now to be considered. In the face of the policy the following provisions appear, to wit:

"On consideration of the statements made in the application for this policy, which application is hereby made a part of this contract," etc.

Again, "This policy is issued and accepted subject to the benefits, provisions, and conditions on the second page hereof, which are made a part of this contract."

Turning to the application we find the following provisions which are pertinent and proper to be considered:

"1. It is hereby agreed and warranted that should the company issue a policy upon this application its interest shall not be affected by verbal statements made to its agents or others, or by the knowledge of such agent, but it shall be affected only by the statements herein made, including those made to the medical examiner, which are hereby warranted to be full and correct as facts, and they shall constitute the basis of any policy which may be issued hereon.

2. In the statement to the medical examiner it is said: "I hereby further declare that I have

read and understand all the above questions put to me by the medical examiner, and the answers thereto, and that the same are true, and that I am the same person described as above, and I hereby warrant that there is not and there has not been any concealment of facts regarding my past and present state of health and habits of life or my personal history."

The conditions referred to as being on the second page of the policy are as follows:

"1. The failure to pay, if living, any of the first three annual premiums, or the failure to pay any notes, or interest upon notes, given to the company for any premium, on or before the days upon which they become due, shall avoid and nullify this policy, without action on the part of the company or notice to the insured or beneficiary; and all payments made upon this policy shall be deemed earned as premiums during its currency. Any and all notes, with their conditions, which may be given for premiums or loans upon the security of this policy are hereby made a part of this contract of insurance.

"2. No suit to recover under this policy shall be brought after one year from the death of the insured.

"3. If the insured should, without the written consent of the company, at any time enter the military or naval service, the militia excepted, or become employed in a liquor saloon, or if the in-

sured should die by self-destruction, whether sane or insane, within three years from the date hereof, this policy shall be null and void, and in case of said avoidance the reserve value only, according to the actuaries' table of mortality, with four per cent. interest, shall be paid on the surrender of this policy. Except as hereinbefore provided, this policy shall be incontestable for any cause except misstatement of age. In case the age of insured shall have been misstated, the amount payable hereunder shall be such proportion of the sum insured as the premium paid bears to the required premium at the correct age of the insured."

The real controversy arises out of the true meaning and proper construction of the phrase, "except as hereinbefore provided." It is said by the company that the phrase applies to and embraces everything contained in the face and on the back of the policy coming before this excepting clause; in other words, it embraces not only the conditions set forth on the second page, but also the warranties and representations made in the application and on the face of the policy on its first page. The different results reached by these different constructions are apparent at a glance. If the phrase is limited to the conditions set out on the second page, then the policy is contestable only for a breach of those conditions, while under the other construction it would

be contestable for any fraudulent misstatement by assured in the application and medical examination.

It is further stated that if the clause should be so construed as to make the policy incontestable for fraud in obtaining it, then the contract itself would be void, because contrary to public morals and a sound public policy.

The question involved in this controversy was before the Supreme Court of Iowa in the case of *Verona H. Welch* v. *The Union Central Life Insurance Company.* In that case the policy involved was the same as in the present case, issued by the same company. That Court held that the phrase, "except as hereinbefore provided," applied not only to the conditions indorsed on the second page of the policy, but also the application and the statements contained in it, and that to hold the policy incontestable for fraud would be to deny any effect to the warranty and agreement of the applicant, while to hold otherwise gives full effect to all parts of the contract.

That Court says if the policy may never be contested for fraud in its procurement, why include the warranty and agreement in it? That Court also intimates that a provision in a policy that it should not be contestable for fraud would be void, and render the contract itself invalid.

The Court also draws a distinction between

policies which are by their terms to become at once incontestable and those to become incontestable only after a certain length of time, and intimates that the latter cases may be sustained, and that fraud will not defeat such policies after the time limited, because the company · has reserved to itself the delay which it deems necessary to detect and discover the fraud, and if it has not been discovered and defended against in that time, it may not be afterward set up. In this latter class falls the case of *Clements v. The Insurance Co.,* 17 Pickle, 22. See the same case reported in 42 Lawyers' Reports Annotated, p. 247. It is conceded that this case is correctly decided, but it is said that the present case, as well as the case from Iowa, is to be distinguished from it by the fact that in the Clements case a period of one year was reserved by the company in which it might make such investigations as it deemed proper, and, if dissatisfied, might cancel the policy, while here no time is reserved. It will be noted that this is a confession that fraud will not prove a defense after the expiration of one year; so that this concession, as well as the holding in the Clements case, goes to the extent that fraud in procuring the policy does not render it void but only voidable within the time stipulated. If the time may be limited to one year within which the defense of

22 P—23

fraud may be made available, it is difficult to see why it may not be limited to six months or one month, or such other time less than this as the company may deem it important to stipulate.

If fraud may be waived at all, certainly the parties may stipulate the grounds upon which the waiver may be made, and if a company can stipulate that its policies shall be incontestable, it may fix the conditions upon which inconstestability shall rest, and may fix a time limit upon the right to contest.

We think that a consideration of the manner in which insurance is effected and policies are written, will remove much of the difficulty in determining the proper decision of this case. When a party applies for a policy, he is required to make an application, and in it to reveal and state everything that the company deems material to the risk. A large number of questions are put to him to elicit the facts. These questions are framed by the company, and he is obligated by the terms of his application to commit no fraud and make no material mistake in answering them. Not only so, but the company by its own medical examiner subjects the applicant to a physical, personal examination, and to a course of questions calculated to bring out and make plain his physical history and condition.

With this statement of the applicant, and report of its own examiner before it, the company

has the privilege of making such investigation as it may deem proper. It is under no obligation to come to a conclusion in any definite or specified time. If it desires a week it may take it; if a month or a year, it may suspend its acceptance until that time expires.

We can see no difference in principle between the present case and the Clements case. In that case the company stipulated for twelve months' time after it issued its policy; in the present case it took the time it deemed necessary before accepting the policy. It may, therefore, well be held to have waived the effects of fraud, since it had such time to discover it as it saw proper. We can therefore see no good reason why these parties may not have entered into such contract if they saw proper so to do. Joyce on Insurance, Sec. 3732.

We are not passing upon the wisdom of such a provision, but upon the rights and liabilities of the parties if it has been made. But the question remains, Did the company intend to cut itself off from the defense of fraud in obtaining the policy?

In the Clements case the incontestable clause read as follows: "After the policy shall have been in force one full year, if it shall become a claim by death, the company will not contest its payment, provided the conditions of the policy as to payment of premiums have been observed."

This is a broad provision, and leaves the policy contestable alone upon the ground of nonpayment of premiums.

Now, in the present case, it is evident that the company intended to stipulate that it would not contest the policy upon any ground except misstatement of age, and "except as hereinbefore provided." We cannot construe this exception as leaving the company an option to contest the policy for any matter contained in the application and medical examination, but only for such matters as are stated in the conditions indorsed upon it. These conditions are, in brief:

1. Failure to pay premiums as agreed upon.

2. Bringing suit within one year after the death of the insured.

3. The entrance by insured into military or naval service, engaging in saloon business, death by self-destruction within three years.

4. Misstatement of age.

To hold that all the statements made in the application are to be excluded from the clause of incontestability would be to deny any scope or effect to that clause.

These statements of the application and examination contain all the grounds of contest of which the policy is susceptible, so far as its terms are concerned. If they are all excepted, and contest may be made upon any or all of them, then the noncontestable clause has no opera-

tion whatever. Of course the clause does not embrace a matter which is. outside of the terms and conditions of the policy, such as nondelivery, forgery, false impersonation, etc., as these matters would go to. the question of title, and not mere fraudulent or false misstatement in the policy itself.

The true meaning is that no defense will be interposed by reason of the terms and form of the policy except those embraced under the head of conditions, including the express provision as to misstatement of age. To illustrate, the company might defend under the policy on the ground that plaintiff was not dead; that the policy had never been delivered; because such defenses do not amount to the contest of the terms, provisions, conditions, and stipulations of the policy.

We are of opinion that the causes set out in the "conditions," and the misstatement as to age, are the only grounds upon which the company, under the terms of this policy, has the right to contest liability, and it has waived the right to make any contest on any other ground covered by the terms and provisions of the policy.

We can come to no other conclusion, and give any effect to this clause in reference to noncontestability, nor to give effect to the different provisions of the policy.

It is assigned as error that the Court refused to charge, upon defendant's request, that "if Jno.

Fox was desperately ill from scurvy, and became weary of life, and deliberately undertook to starve himself to death, and the scurvy and starvation jointly caused his death, there can be no recovery in this case."

The defendant had already made two requests bearing upon this feature of the case, both of which were given; and are as follows:

"If John Fox refused to take nourishment, and the proximate cause of his death was starvation, and he refused to take nourishment in order to bring about that result, there can be no recovery by plaintiff in this case. That would be so although John Fox may have been so sick from scurvy that it would ultimately have caused his death. If John Fox was fatally ill with scurvy, and his death was hastened by such starvation, there can be no recovery by plaintiff."

Again, "If John Fox was desperately ill with scurvy, and became weary of life, and deliberately starved himself to death, there can be no recovery by plaintiff in this case.

. "If the lack of nourishment was the proximate cause of his death, this would be so even though he was so afflicted with scurvy that it would have ultimately resulted in his death."

This, we think, is ample on this feature of the case, and embraces the request refused.

We can see no error in the proceedings and judgment of the Court below, and it is affirmed with costs.