THE INDEPENDENT LIFE INSURANCE COMPANY, Plaintiff in Error, v. S. L. YATES, Administrator, Defendant in Error.

Middle Section. August 6, 1930.

James A. Newman, of Nashville, and J. T. Baskerville, of Gallatin, for plaintiff in error.

J. T. Durham and Oscar Russell, of Gallatin, for defendant in error.

DeWITT, J. This is a suit upon an industrial life insurance policy for $315, containing the following provisions:

> "No obligation is assumed by the Company unless on the date and delivery hereof the insured is alive and in sound health."

> "This policy shall be incontestable from date of issue except for non-payment of premiums, actual and intended fraud, or for engaging in military or naval service in time of war, without permission from the Company, etc."

One of the defenses is that the insured, Nannie B. Oldham, was not in sound health on the date and delivery of the policy. This was the beginning of the period of incontestability.

If the insured was not in sound health on that date, it was the duty of the insurer then and there to know it before delivering the policy; for upon delivery the policy became incontestable by its terms. Any other conclusion would render the clause of incontestability meaningless. It is illogical to say that the policy was incontestable from date of issue and delivery, and yet that it never was effective as a contract.

In the few reported cases in which these provisions had to be construed together, the rule is declared that a condition that the insured shall be in good health at delivery of the policy is covered by the incontestable clause. A leading case upon this subject is Mutual Reserve Fund Life Association v. Austin, 142 Fed., 298, 6 L. R. A. (N. S.), 1064, in which the court said:

"The argument that the policy was not in continuous force is predicated upon an extrinsic fact not appearing upon the face of the policy, to-wit, the fact that the assured was not in good health at the date of the delivery of the policy. In setting up, or even in relying upon, this extrinsic fact, the Company is contesting its policy as evidence of its obligation. . . . Instead of being an incontestable policy, if we adopt the defendant's argument, the policy is always contestable."

Other cases in accord are, Mohr v. Prudential Ins. Co., 32 R. I., 177, 78 Atl., 554; American Nat. Ins. Co. v. Welsh (Tex. Civ. App.) 3 S. W. (2d), 946; Dibble v. Reliance Life Ins. Co., 170 Cal., 199, 149 Pac., 171, Ann. Cas. 1917E, 34; Trust Co. v. Insurance Co., 173 N. C., 558; Wamboldt v. Ins. Co., 191 N. C., 32, 131 S. E., 395, 45 A. L. R., 1360. In Union Central Life Insurance Co. v. Fox, 106 Tenn., 347, 82 Am. St. Rep., 885, 61 S. W., 62, our Supreme Court could see no force in any distinction between policies which are by their terms to become at once incontestable, and those to become incontestable only after a certain length of time. The principle to be applied is the same. If the insurer holds out to the insured the tempting provision of incontestability from date of delivery, it is bound by that provision not to question the soundness of health at that date.

There is reserved, however, a question of actual or intended fraud upon which, under the terms of the policy, a contest might be predicated. In other words, if the insured was not in sound health at the date of delivery of the policy that fact could not avoid the policy; but she yet may have obtained the policy by actual fraud, and this would be open for consideration as a defense.

The rule is that where the incontestable clause fixes the period of incontestability (as here, from delivery), the insurer is precluded from contesting the policy after such time on any ground not specifically excepted in such clause. 37 C. J., 542; Thompson v. Fidelity Mut. Life Ins. Co., 116 Tenn., 557, 92 S. W., 1098, 6 L. R. A. N. S., 1039; Clement v. N. Y. Life Ins. Co., 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247; Thistle v. Equitable Life Assurance Society, 149 Tenn., 667, 261 S. W., 667; Dibble v. Reliance Life Ins. Co., 170 Cal., 199, 149 Pac., 171, Ann. Cas. 1917E, 34.

The application upon which the policy was issued contained the following:

"I hereby apply for the above described policy, and all the statements in Part A of this application are made by me to induce The Independent Life Insurance Company of America to issue said policy of insurance; and I hereby warrant that life proposed has never been rejected by any insurance company, is in perfect health, has never been attended by a phys-

ician for any serious injury or illness, has never had any pulmonary disease, chronic bronchitis, disease of the heart, liver or kidney, or paralysis, nor any kind of deformity.''

The policy was issued on July 4, 1927, and the insured died on March 13, 1928.

Dr. T. E. Wright, who treated the insured until shortly before her death, testified that he thought she had tuberculosis; that she had probably had it for as much as two years; and that he treated her for tuberculosis. He never did say positively that she had that disease but that was his opinion. He thought she had tuberculosis in both lungs. When asked if he ever told her that she had tuberculosis he said, ''I probably did tell her.'' Again he said that he did tell her before she made her application for the insurance. Again he qualified this statement and said he was not positive that he told her prior to that time.

The evidence shows clearly that the insured did work as a housekeeper and cared for her several children and did not make the appearance of being in ill health to certain of her neighbors who testified.

Dr. Reese, of Gallatin, testified that two or three weeks before her death the insured came to him for an examination; that he found that she had tuberculosis; that from the history of her case, which she gave him, he would say that she had had the disease for four or five months, possibly longer, possibly not so long. He said that he did not think that the disease had been of two years duration. He said also that she gave him a ''history of epilepsy''; that from her account he thought that she had had epilepsy, and that certain convulsions which she had had were not likely to have been due to religious frenzy.

Dr. T. Y. Carter attended the insured for the last five days of her life. He said that she had epileptic convulsions; that she also had pneumonia and that, in his opinion, was the cause of her death. He did not discover any tuberculosis, but admitted that he would probably have overlooked this in view of the acute symptoms which she had. He said that when he visited her on March 8, 1928, she had an acute attack of epilepsy. She was unconscious with pneumonia. His opinion was that epilepsy had been existing for as much as two or three years. On cross-examination he admitted that it would be mostly a guess as to how long such a disease had existed in a patient. About as far as he could tell, the epilepsy might have existed for two or three years. It appears that epilepsy is an incurable disease but rarely fatal of itself. The insured evidently died of pneumonia.

The testimony of the physicians does not show clearly that the insured had tuberculosis at the date of the application. It does

show that for a considerable period before said date she had been treated by a physician, and Doctor Wright, the physician testified that this treatment was for tuberculosis, although he was not certain whether he had told her of it. Doctor Wright did not think that she was afflicted with epilepsy. There is no evidence that the insured knew that she had epilepsy, and the testimony that she did have epilepsy prior to the date of the application, which was June 26, 1927, is based entirely upon opinion and is too meager and insubstantial to warrant the conclusion that she did have epilepsy prior to said date. The terms, "actual and intended fraud," necessarily imply a guilty knowledge. If the insured did not know that she had tuberculosis or epilepsy she did not consciously practice a fraud upon the insurance company in making the representations in her application. We may assume that she had tuberculosis or epilepsy or both, when she made the application; but if she did not know it she was not guilty of such fraud. We find that she had been treated by a physician and even if it was for a serious illness if she did not know that it was serious, she was not guilty of such fraud. We must exclude all such matters of defense unless she knew that the representations which she was making were false. The incontestable clause causes this exclusion in the absence of proof of actual or intended fraud. There is no distinction here to be made between actual and intended fraud. "Actual fraud is intentional fraud. It consists in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." 26 C. J., 1060. It is not a question of innocent conduct which, however unintentional might work a fraud; but it is a question of consciousness of the falsity of the representations and therefore of actual intent to defraud. The conduct of this character must be overt in order to bring it within the exceptions to the incontestable clause. We do not think that the evidence shows that the insured was guilty of such overt conduct, and therefore the exception does not apply.

It results that the assignments of error are overruled and the judgment of the Circuit Court is affirmed. A judgment will be entered in this court in favor of the defendant in error as administrator of the estate of the beneficiary, against the plaintiff in error, and the surety on its appeal bond, for the sum of $340, with interest from February 22, 1930, the date of the judgment in the Circuit Court, and all costs of this cause.

Faw, P. J, and Crownover, J., concur.