## McDONALD v. MUTUAL LIFE INS. CO. OF NEW YORK.
### No. 7950.

Circuit Court of Appeals, Sixth Circuit. Dec. 5, 1939.

John A. Osoinach and Charles C. Brown, both of Memphis, Tenn., for appellant.

G. T. Fitzhugh, of Memphis, Tenn. (G. T. Fitzhugh and Fitzhugh, Murrah & Fitzhugh, all of Memphis, Tenn., and Louis W. Dawson, of New York City, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Appellant, as testamentary guardian of the minor children of Prather S. McDonald, instituted an action at law on a policy of insurance alleged to have been issued by appellee on the life of Prather S. McDonald, deceased. Jury trial was waived, and the District Court rendered judgment in favor of appellee upon the ground that the policy never came into legal existence.

The policy was in the amount of $10,000.00, with double indemnity provision in case of death resulting from an accident. The application for the policy was dated September 14, 1932. On September 23, 1932, Prather S. McDonald (hereinafter called the applicant) was seriously injured in an automobile accident, and died on October 9, 1932. On September 24, 1932, the day after the accident, the soliciting agent of appellee wrote a letter to the applicant, in which he stated:

"Your policy has been approved and issued subject to your approval of the big rider inside as to the Mode of Settlement. It is as you wanted it except that the Company makes provision in the event of the death of the children. If you approve of the rider, will you please sign the two enclosed forms and return to me. If you want the rider changed, return the whole works and I will have the changes made. If you can't take up the policy within the 60 days, the Company will naturally want the policy back."

With the letter was enclosed the policy, to which was attached a rider which provided, among other things, for payment in monthly installments of $50.00 to each of the two children of the deceased, and made provision for payment in a lump sum in the event of the death of both children to the executor or administrator of the last survivor. The application did not give instructions as to the mode of settlement, but the soliciting agent penciled a suggestion on the top margin, as follows: "Prin. & int. payable to beneficiaries at rate of $50.00 per mo. each as long as it lasts." A notice was also enclosed in the letter to applicant, directed to appellee's manager at New York, which read:

"The Policy No. 4644558, Insured's name Prather S. McDonald, must not be delivered or the first premium accepted thereon until and unless the request written below has been executed by the insured. This form, when properly executed as above, is to be returned to the Registrar's Division at the Home Office. E. Dixon Williams, Registrar."

To this notice was appended as part of the same printed form, to be signed by the proposed insured, the following statement:

"Referring to the above numbered policy, the undersigned hereby certifies that I have read the endorsement on said policy providing for Mode of Settlement elected and said endorsement is satisfactory and is accepted by me."

The letter also enclosed a receipt for the policy, to be signed by the insured, which reads as follows:

"The receipt of Policy No. ——— of The Mutual Life Insurance Company of New York for $——— on the life of ——— is hereby acknowledged. It is understood and agreed that the said policy is received for inspection only, notwithstanding the acknowledgment of the receipt of the premium contained in the policy; and it is expressly agreed that the said policy is not in force, the first premium thereon not having been paid. I hereby further agree to pay the premium thereon or return the policy upon demand."

On September 27, 1932, at the direction of the applicant, appellant mailed a check for the amount of the first premium

to appellee, which refused to accept the check or to recognize the existence of the policy. The other two documents were not signed or returned to appellee. On September 26, 1932, the soliciting agent wrote to the applicant as follows:

"Today I was advised that the company wanted your policy recalled. They did not give me the reason, but I think it is because I told them to date it back to September 1st to give you the benefit of age 45, and I notice that they gave you the rate of age 46 (sticking you $15.00 per annum). When you return it, please mention any changes you want made in the rider. Also I think we got 'former residence' wrong in the application. It shows 'Hotel Margaret, Brooklyn, N. Y. 1929 to 2-2-30.' This might be the trouble so send me the dope in case they ask me about it."

This letter was not answered.

Proofs of death were offered to appellee, but were rejected. The policy was never returned, nor was there any reply to appellee's letter rejecting the proofs of death. No claim was made under the policy until January 18, 1936, at which time this action was instituted.

It is the principal contention of appellant that since the premium was paid the incontestable clause of the policy bars any inquiry into the circumstances which surrounded its receipt by Prather S. McDonald, and that the judgment of the District Court must be reversed.

█ We think that the judgment should be affirmed. When the soliciting agent mailed to the applicant the proposed policy, together with the important rider, the inspection receipt and the acceptance of the mode of settlement, this did not constitute such a delivery as to give effect to the contract of insurance. As the application was for a policy principally for the benefit of the children, the "Mode of Settlement" was of major importance. It was an offer of a new contract, and could be accepted only by an unequivocal indication that the applicant had been aware of and was satisfied with the changes made in the instrument. This was to be shown by the applicant's signature to the form of acceptance of the mode of settlement and to the inspection receipt, and their return to the company. While the inspection receipt contained certain provisions with reference to payment of premium,

plainly inserted because of the fact that the proposed policy, as was customary, acknowledged receipt of the first premium, it was not ambiguous, and its principal condition is that the policy is received for inspection only. These conditions were communicated to the applicant not only by being enclosed with the letter, but by the instruction of the agent, "If you approve of the rider, will you please sign the two enclosed forms and return to me." The mailing of the check for the premium was not compliance with these conditions, nor did it constitute acceptance of the offer. At the time of the applicant's death, the policy, therefore, was not in effect.

The contract contained an incontestable clause, which reads as follows:

"*Incontestability.* Except for non-payment of premiums and except for the provisions for double indemnity and the waiver of premium as provided in sections 1 and 3 respectively, this policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

█ Assuming that the contract had come into existence, the period of limitations provided in the incontestable clause had expired prior to the institution of the suit, and no evidence of extraneous matters would have been admissible. Clement v. Insurance Co., 101 Tenn. 22, 46 S. W. 561, 42 L.R.A. 247, 70 Am.St.Rep. 650. Under Tennessee law, the purpose of the incontestable clause is to fix a limited time within which the insurer must ascertain the truth of the representations made by the proposed insured, and within which limited period the insurer must, if ever, contest the validity of the policy. Clement v. Insurance Co., supra, 101 Tenn. at page 28, 46 S.W. 561, 42 L.R.A. 247, 70 Am.St.Rep. 650; Humpston v. State Mutual Life Assur. Co., 148 Tenn. 439, 448, 256 S. W. 438, 31 A.L.R. 78. These cases however do not assert that the incontestable clause prevents defense by the insurer based upon the contention that the proposed policy never took effect as a contract. In fact, reasoning from the analogy of the Clement case, it is evident that the courts of Tennessee limit the effect of the incontestable clause to questions arising out of the validity of an issued policy. In Insurance Co. v. Fox, 106 Tenn. 347, 61 S.W. 62, 82 Am.St.Rep. 885, it was stated

that the clause does not embrace a matter which is outside of the terms and conditions of the policy, such as non-delivery, forgery, false impersonation, etc., as these matters would go to the question of title and not mere fraudulent or false statement in the policy itself. The court also declared that the company could defend upon the ground that the policy had never been delivered, declaring that such a defense does not amount to a contest of the terms, provisions, conditions and stipulations of the policy. 106 Tenn. page 357, 61 S.W. 62, 82 Am.St.Rep. 885. Here the undisputed facts show that the policy, containing a material provision to which the applicant had never agreed, was placed in his hands with a condition attached, namely, that he should inspect it and indicate whether the changes in the instrument met his approval. This was not done, and hence the proposed policy never came into legal existence.

The judgment is affirmed.