Humpston v. State Mut. Life Assur. Co.

REUBEN ALLEN HUMPSTON *v.* STATE MUTUAL LIFE ASSUR. CO. OF WORCESTER, MASS.*

(*Knoxville.* September Term, 1923.)

1. **INSURANCE.** Life policy not rescinded by company's letter to beneficiary.

Letter of insurance company to beneficiary under life policy, after death of insured and proof of claim, denying justice of the claim and refusing to pay it, did not rescind the policy; beneficiary's consent being necessary to a rescission. (*Post, p.* 443.)

2. **INSURANCE.** Limitation in policy for contest unaffected by Insured's death within period.

Provision of life policy that it "shall be incontestable after one year from date of its issue," except for nonpayment of premiums, is unaffected by death of insured within the year, on the theory that the contract of insurance became a mature demand on death of insured and that, by that event, liability or nonliability became fixed. (*Post, pp.* 443-445.)

*On applicability of incontestable clause to nonpayment of premiums, see note in 6 L. R. A. (N. S.), 1039.

On death of insured as interrupting period after which policy is incontestable, see note in L. R. A., 1918D, 1198.

On power of equity to take jurisdiction of suit to cancel insurance policy for fraud, and to enjoin action at law on the policy, see notes in 12 L. R. A. (N. S.), 881 and 48 L. R. A. (N. S.), 265.

As to the force of incontestable clause in insurance policy as excluding a defense based upon fraud, see notes in 6 A. L. R., 452 and 13 A. L. R., 675.

For authorities discussing incontestability of life insurance under provisions of the policy or of a statute, see note 42 L. R. A., 247.

Cases cited and approved: Royal Circle v. Achterrath, 204 Ill., 549; Flanigan v. Federal L. Ins. Co., 231 Ill., 399; Ramsey v. Old Colony Life Ins. Co., 297. Ill., 592; Ebner v. Ins. Co., 121 N. E., 315; Monahan v. Ins. Co., 283 Ill., 136; Mut. Life Ins Co., v. Buford, 160 Pac., 928; Clement v. Ins. Co., 101 Tenn., 22; Thompson v. Fidelity Ins. Co., 116 Tenn., 557; Wright v. Mut. Ben. Assn., 118 N. Y., 237; Carlson v. Supreme Council, 115 Cal., 466.

Cases cited and distinguished: Clement v. Ins. Co., 101 Tenn., 22; Monahan v. Met. Life Ins. Co., 283 Ill., 136; John Hancock Life Ins. Co. v. Schlink, 175 Ill., 284; Eber v. Ohio State Life Ins. Co., 69 Ind. App., 32; Hardy v. Phoenix Mut. Life Ins. Co., 180 N. C., 180; Ins. Co. v. Peeler, 176 Pac., 939.

3. **INJUNCTION.** Limited time for contest of life policy held special circumstance warranting injunction.

That, before insurer could present its defense in an action on a life policy, the policy would become incontestable under its clause limiting contest to a year from its issuance, would be a special circumstance peculiar to the case, giving jurisdiction to equity to entertain suit to enjoin beneficiary's action on the policy. (*Post, pp.* 455, 456.)

Case cited and approved: Hamilton v. Cummings, 1 Johns. Ch. (N. Y.), 517.

Case cited and distinguished: The Sailors v. Woelfle, 118 Tenn., 755.

4. **TRIAL.** On motion for directed verdict incontestability clause available though not pleaded in view of profert.

Plaintiff in action on a life policy, by failing to expressly plead its clause making it incontestable after a year from its issuance, did not waive it, with the result that he could not take advantage and rely on it in his motion for a directed verdict, he having made profert of the policy in his declaration, and introduced it in evdence, and read such clause to the court and jury, so that it became part of the record. (*Post, pp.* 456-458.)

Humpston v. State Mut. Life Assur. Co.

Cases cited and approved: Kegler v. Miles, 8 Tenn., 426; Allen v. Word, 25 Tenn., 284; Ins. Co. v. Thornton, 97 Tenn., 1.

Cases cited and distinguished: Bomar v. Hagler, 75 Tenn. 89; Waterhouse v. Sterchi Bros. Furn. Co., 139 Tenn., 117.

### ON PETITION TO REHEAR.

5. **INSURANCE.** Running of period for contest not suspended by beneficiary's action on policy.

The running of the period of a year limited by a life policy for contest thereof is not suspended by beneficiary bringing action on the policy within the year. (*Post, pp.* 458-465.)

Cases cited and approved: Lewis v. Turnley, 97 Tenn., 197; Clark v. Duncanson, 79 Okla., 180; Riddlesbarger v. Hartford Ins. Co., 74 U. S. 258; Wilkinson v. Ins. Co., 72 N. Y., 499; Arthur v. Ins. Co., 78 N. Y., 402; Wilson v. Ins. Co., 7 R. I., 301; Ins. Co. v. Burr, 94 Pa. St., 345; Ins. Co. v. Burr, 128 Pa. St., 386; Hocking v .Ins. Co., 130 Pa. St., 170.

Cases cited and distinguished: Mut. Life Ins. Co. v. Buford, 61 Okla., 158; Guthrie v. Indemnity Assoc., 101 Tenn., 643.

Laws cited and construed: Rev. Laws 1910, sec. 4746.

### FROM KNOX.

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. VON A. HUFFAKER, Judge.

E. R. TAYLOR and FRANTZ, McCONNELL & SEYMOUR, for Humpston.

TURNER, KENNERLY & CATE, for Assur. Co.

MR. JUSTICE HALL delivered the opinion of the Court.

An action by Reuben Allen Humpston, who will herein-after be referred to as plaintiff, against State Mutual Life Assurance Company of Worcester, Mass., who will hereinafter be referred to as defendant, to recover upon two policies of life insurance for $5,000 each, dated March 7, 1919, and issued upon the life of Charles Ernest Humpston, the beneficiary named in the policies being the plaintiff, who is the father of the insured.

The insured died on November 29, 1919, and within less than a year after the policies were issued, as the result of Bright's disease.  Proofs of death were promptly and seasonably made and filed by plaintiff, and on January 30, 1920, defendant wrote plaintiff a letter denying the justice of the claim, and refused to pay the same, but made no tender of the premiums which had been paid by the insured at the time of the issuance of said policies.

The summons was issued on March 5, 1920, and was executed by service on defendant's agent on March 16, 1920.

Plaintiff's declaration was filed April 26, 1920.  It made profert of the policies, and in addition to seeking a recovery for the principal sum of $10,000, it sought a recovery of interest and the statutory penalty of twenty-five per cent. because of defendant's refusal to make prompt payment in accordance with the terms of the policies.

Defendant, on June 15, 1920, which was more than a year after the policies were issued, filed its pleas to the declaration; setting up, in substance, that the insured had

made certain representations in his applications for said insurance, which were false and fraudulent, and were made with the intent to deceive defendant in that he had been asked in said applications, "For what ailment or disease not included in your above answers have you ever consulted a physician?" and the applicant answered. "Typhoid fever in 1913," and the pleas aver that this answer was falsely and fraudulently made, because, in December, 1918, the insured had been dangerously ill with influenza and double pneumonia for a period of weeks; and that, had this fact been disclosed to the company, the policies applied for would not have been issued; and, further, that; by reason of said misrepresentations, said policies were and are void at the election of defendant, which it then and there elected to avoid and cancel them because of said false representations made in said applications.

It was further interposed in said plea, by way of defense, that the illness of the insured in December, 1918, left him in such an impaired physical condition that his death was due to a disease caused and superinduced by said illness and the weakened condition in which the insured was left as a result thereof; that, had these facts been made known to defendant, the applications for said insurance would have been rejected, and said policies would not have been issued; and, along with these pleas, defendant tendered into court the sum of $267.75, the amount of the premiums paid on the policies and accrued costs in the case; also the plea that said representations were material and increased the risk of loss; and later, by leave of the court, defendant filed an additional plea setting up

the falsity of the following certificate made by the insured to his applications for said insurance:

"I hereby certify that I have made all the statements and answers in numbers one and two of these applications, and declare that they have been correctly recorded by the soliciting agent and medical examiner, and that no circumstance or information touching my past and present state of health and habits of life has been withheld or omitted."

It was further averred in this plea that said certificate was false and fraudulent for the reasons mentioned in the second and third pleas hereinbefore referred to.

On these pleas plaintiff joined issue, and later sought to file an additional replication to defendant's pleas, which averred, in substance, that said policies were Georgia contracts, and were controlled by the laws of the State of Georgia, which laws were copied in said replication.

This additional replication was resisted by defendant as a departure in pleading; its insistence being that plaintiff was attempting to set up a new cause of action by way of replication, which was in no wise related to the cause of action stated in the declaration.

This replication was disallowed by the court, but the matter incorporated therein was ordered by the court to stand as an amendment to plaintiff's declaration, but was subsequently withdrawn by the plaintiff upon demurrer being filed to the declaration as amended.

On the issues thus made the case went to trial before the court and a jury. The policies were offered in evidence by the plaintiff, considered as read, and became a part of the record in the case. They each contain the following incontestable clause:

"This policy shall be in contestable after one year from the date of its issue, except for nonpayment of premiums."

At the conclusion of all the evidence, plaintiff moved the court to direct a verdict in his favor for the reasons:

First, that the issues presented were immaterial as under the policies, it was necessary for defendant to take some affirmative proceedings to cancel or rescind the policies within the contestable period; and, second, because a complete copy of the applications was not attached to the policies and made a part thereof.

Defendant also moved the court for a directed verdict in its favor, for the following reasons:

First, that the indisputed evidence in the case showed that the insured made certain misrepresentations and concealments as to his previous health, which were false and fraudulently made with the intent to deceive defendant, and thereby procure said policies; and, second, that he was guilty of misrepresentations and concealments that were material to the risk, which were sufficient to avoid the policies regardless of the question of good or bad faith on the part of the insured.

Defendant's motion for a directed verdict was sustained by the trial court, and a judgment was entered dismissing plaintiff's suit.

From this judgment plaintiff appealed to the court of civil appeals. That court reversed the judgment of the trial court, and sustained plaintiff's motion for a directed verdict, and entered judgment against defendant for the principal amount of said policies and interest, but denied plaintiff a recovery for the statutory penalty.

The case is now before this court upon a writ of *cer-*

*tiorari,* sued out by defendant, for review, and errors have been assigned.

By the first assignment of error, it is insisted that the court of civil appeals erred in giving effect to the incontestable clause contained in said policies; that the court should have held:

First. That, upon the death of the insured within one year from the date of the issuance of said policies, they became mature demands, and the rights of the parties in respect to liability or nonliability became fixed as of that date, and that defendant could not set up any defense to plaintiff's action existing as of that date, and in holding that defendant was bound to take affirmative action to rescind the policies within a year from the date of their issuance; that, in any event, the court erred in not holding that, plaintiff having sued on said policies, defendant had the right by proper pleas to contest the same, regardless of when its pleas were filed.

Second. That the court of civil appeals erred in holding that plaintiff had not waived the incontestable clauses contained in said policies by his failure to expressly plead the same, either in his declaration or by way of replication to defendant's pleas.

Third. That the court of civil appeals erred in holding that the matters set up in defense of plaintiff's action were immaterial; but on the record it should have held that said matters were material to the risk, and that the representations and concealments relied on by defendant in its pleas were made by the insured with the intent to defraud, and did defraud defendant in that it induced it to issue said policies, which, but for said fraudulent misrepresentations, would not have been issued.

Fourth. That the court of civil appeals erred in sustaining plaintiff's motion for a directed verdict, and in rendering judgment against defendant for the amount of said policies with interest and costs.

Fifth. That the court of civil appeals erred in not affirming the judgment of the circuit court in favor of defendant and dismissing plaintiff's suit with costs.

As we view the case, only three questions need be determined, and, if determined in favor of the judgment of the court of civil appeals, they are conclusive of the case. The first is, Did defendant's letter of January 30, 1920, in which it denied the justice of plaintiff's claim, and refused to pay the same, amount to a rescission of the policies, and the second is whether or not the policies are contestable at all by defendant, in view of the incontestable clauses contained therein and the facts; and, third, did plaintiff waive said incontestable clauses by his failure to rely on them in his pleadings?

There is no merit in the first contention of defendant that its letter of January 30, 1920, had the effect of rescinding the policies. There was no evidence offered which tended to show that plaintiff consented to a rescission of the policies. His consent was necessary to accomplish such a result. On this point no authorities need be cited.

On the second point, it is the contention of defendant that the contracts of insurance became mature demands upon the death of the insured, and that liability or nonliability became fixed by that event.

While it is contended by plaintiff that the insured's death within the year in which said policies, by their terms, might be contested, did not relieve defendant of

the necessity of taking some affirmative action, within one year from the date of the issuance of said policies, to rescind them or have them canceled for fraud, and not having done so within the year, it is precluded from doing so in this action.

It was held by this court in *Clement* v. *Insurance Co.*, 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650, that incontestable clauses inserted in insurance policies similar to the one in question are reasonable and valid, and that the practical and intended effect of such a clause is to create a short statute of limitation in favor of the insured, within which limited period, the insurer must, if ever, test the validity of the policy. The court in that case said:

"It has been well said: 'The effect of the provision is to prevent the insurer from interposing as a defense the falsity of the representations of the insured, which is a fraud. But it does not prevent abandonment, rescission, and cancellation of the contract for such fraud, provided the action for that purpose is brought within a year.' It is virtually saying to the insured that 'I will take one year in which to ascertain whether your representations are false or not, and whether you have been guilty of any fraud in obtaining the contract, and if within that period I cannot or do not detect such falsity and fraud, I will obligate myself to make no further inquiry into these matters, and to make no defense on account of them.' "

It is insisted by counsel for defendant that the principle, which is laid down in the Clement Case, is not applicable to a case where death occurs during the one-year period.

This insistence is not sound in view of the peculiar language contained in the incontestable clauses in the policies under consideration. We will here quote them again: "This policy shall be incontestable after one year from the date of issuance, except for nonpayment of premiums."

The usual incontestable clause contained in policies of life insurance is:

"After this policy shall have been in force [for a specified time] it shall become incontestable, except for nonpayment of premiums."

The identical question arose in the case of *Monahan* v. *Metropolitan Life Insurance Co.*, reported in 283 Ill., 136, 119 N. E., 69, L. R. A., 1918D, 1196. The policy sued on in that case contained the following clause: "After two years this policy shall be noncontestable except for the nonpayment of premiums as stipulated or for fraud."

In that case the court said:

"In passing upon the validity of incontestable clauses in policies of insurance, the courts have defined their purpose, and when this purpose as so judicially determined is considered it aids in the construction of the language used in an incontestable clause. Incontestable provisions in insurance policies have been held valid as creating a short statute of limitations in favor of the insured, the purpose of such provisions being to fix a limited time within which the insurer must ascertain the truth of the representations made. *Royal Circle* v. *Achterrath*, 204 Ill., 549, 63 L. R. A., 452, 98 Am. St. Rep., 224, 68 N. E., 492; *Flanigan* v. *Federal L. Ins. Co.*, 231 Ill., 399, 83 N. E., 178, Ann. Cas., 1915D, 974; *Weil* v. *Federal Life Ins. Co.*, 264 Ill., 425. This being the purpose for fixing a specified time after which the policy shall be incontestable, it

148 Tenn.—29

is not apparent, as plaintiff in error suggests, that the
meaning of the clause here involved is that the policy
shall not become incontestable until it has been in force
for two years. There is nothing in this clause to indicate
that the parties were contracting that plaintiff in error
should have two years during the lifetime of Fay in which
to investigate and determine whether false statements
had been made in the application for the insurance. Plain-
tiff in error reserves two years' time in which to make
such investigation, and to determine whether there has
been such a breach of warranty as would authorize it to
rescind its contract."

The court also held in that case that the incontestable
clause is not only for the benefit of the insured, but inures
to the benefit of the beneficiary after the insured's death.
In passing on this point the court said:

"Plaintiff in error cites *John Hancock Life Ins. Co.*
v. *Schlink*, 175 Ill., 284, 51 N. E., 793, in support of its
proposition that the rights of the parties under a contract
of insurance become fixed at the time of the death of the
insured. The decision in that case has no bearing what-
ever upon the point raised here. Some of the rights and
obligations of the parties to a contract of insurance nec-
essarily become fixed upon the death of the insured. The
beneficiary has an interest in the contract, and, as between
the insurer and the beneficiary, all the rights and obliga-
tions of the parties are not determined as of the date of
the death of the insured. The incontestable clause in a
policy of insurance inures to the benefit of the beneficiary
after the death of the insured as much as it inures to the
benefit of the insured himself during his lifetime. The
rights of the parties under such an incontestable clause

as the one contained in this contract do not become fixed at the date of the death of the insured. In case of a breach of warranty . . . the insurer must assert its claim within the two-year period, whether the insured survives that period or not, either by affirmative action or by defense to a suit brought on the policy by the beneficiary within the two years."

To the same effect is the holding of the court in *Ramsey* v. *Old Colony Life Insurance Co.,* decided by the supreme court of Illinois on April 21, 1921, and reported in 297 Ill., 592, 131 N. E., 108. In that case the policy was made payable to the estate of the insured, and the court held that, where policies were made payable to the estate of the insured, there was no one to whom premiums could be tendered, as there was no beneficiary in existence until an administrator was appointed. On this point the court said:

"The appellant's right of action to contest the validity of the policy was necessarily in abeyance after the death of the insured until the appointment of an administrator. There was no person in existence to be sued, the estate of the insured being the beneficiary in the policy, until such appointment. There was no person to whom the company could tender the premiums which it had received or against whom it could proceed for the cancellation of the policy. The statute makes no provision for the appointment of an administrator who is not of kin to or a creditor of the decedent or the public administrator. The persons interested in the estate having refused or failed to take out letters of administration, the appellant, without any fault of its own, found it impossible to begin any suit to invalidate the policy within the year reserved

to it. If the condition is to be literally applied in all cases where the insured dies before the expiration of the incontestable period, even on the day after the date of the policy, the persons interested in his estate have it in their power in cases of policies payable to the estate of the insured, by refusing to take out letters of administration, to deprive the company of any opportunity of making its defense, no matter how meritorious a defense it may have. Where one party to a contract has by his own act made it impossible for the other party to comply with the contract and thus protect his interest in it, he cannot avail himself of the noncompliance of the other party to enable him to enforce performance. The impossibility of maintaining the suit because no person is in existence who may be sued will not be permitted to work the injustice of depriving the company of its right to maintain an action to cancel the policy at any time within the year after its date. Either the death of the insured must fix the rights of the parties, so that the policy, if contestable then, may be contested whenever suit is brought, or the cause of action of the company must be regarded as suspended during the time it is prevented from suing by the failure to appoint an administrator, and, upon the appointment of an administrator, the suit may be maintained, provided that the whole time allowed the company for that purpose does not exceed one year."

Another case directly in point is that of *Ebner* v. *Ohio State Life Insurance Co.,* 69 Ind. App., 32, 121 N. E., 315, decided by the court of appeals of Indiana in December, 1918. In that case the court, with respect of the question of whether or not the incontestable clause inures to the

Humpston v. State Mut. Life Assur. Co.

benefit of the beneficiary upon the death of the insured, said:

"The policy, under the heading "incontestability,' contained the following provision: (1) After one year this policy shall be incontestable except for nonpayment of premiums.'

"Proceeding to a consideration of the case in its general features, we are first required to construe the incontestability provision of the policy, which for purposes of this case is as follows: 'After one year this policy shall be incontestable. . . .' There were certain exceptions which need not be further noticed, as they are not applicable here. It is appellee's contention that this provision should be construed to mean that a policy containing it is non-contestable after one year, provided it continues in force for that length of time, or provided it does not mature by the death of the insured before the expiration of the year; that, where the insured dies within the year, the provision has no application. . . . It is apparent that the construction for which appellee contends requires that there be read into the provision something which it does not in terms contain. Had it been the purpose of the author of the provision, or the intent of the parties to the contract in assenting to it, to stipulate that appellee's right to contest should be limited to a period of one year, only in case the policy continued in force for that length of time or longer, it would seem that apt language to that effect might have been employed. . . ."

Also another case directly in point is *Hardy* v. *Phœnix Mutual Life Insurance Co.*, 180 N. C., 180, 104 S. E., 166. In that case the court said:

"The remaining question, and one not heretofore decided by this court, is as to the effect on the incontestable clause of the death of the insured within one year from the date of the policy, and this depends largely upon the language used, and the purpose for which the clause was inserted in policies.

It says it 'shall be incontestable after one year from its date, except for nonpayment of premium,' and, if we adopt the view of the defendant that this means, 'that if the policy had been in force one year, or if the insured should survive one year after the date of the policy, it should be incontestable,' we must insert in the contract, expressed in simple, unambiguous language, stipulations which do not appear there, and which materially affect the contract of the parties, which we are not at liberty to do. . . .

"If, therefore, there is nothing in the clause itself changing its terms or effect upon death of the insured within one year, if the clause was inserted for the benefit of the insurance company, to enable it to increase its business, if the period of one year after which the policy was to become incontestable, was to afford opportunity to the company to make its investigations and to commence an action for the cancellation of the policy, and if, during the whole of the year some one has been in existence, the beneficiary, against whom an action could be brought, we see no reason for refusing to give the plaintiff the full benefit of the clause as it is written.

"The death of the insured did not place the defendant at any disadvantage under the policy, nor stop its investigations, nor did it affect its right to commence an action, and, in most cases, death would inure to the benefit of

Humpston v. State Mut. Life Assur. Co.

the company, if it contemplated an action to cancel the policy by removing a hostile witness.

"Our investigations, and those of counsel, indicate that the question has arisen very few times, and that the question, then, has been decided in accordance with this opinion. *Ebner* v. *Insurance Co.,* 121 N. E. (Ind.), 315, and *Monahan* v. *Insurance Co.,* 283 Ill., 136, 119 N. E., 68, L. R. A., 1918D, 1196, are directly in point."

Another case also directly in point is *Insurance Co.* v. *Peeler* (Okl. Sup), 176 Pac., 939, 6 A. L. R., 441. In that case the court said:

". . . There is only one condition upon which the validity of the policy can be questioned after the lapse of a year, and that is the nonpayment of premiums. The meaning of the provision is that, if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity. The language admits of no reasonable construction other than that the company reserves to itself the right to ascertain all the matter and facts material to its risk and the validity of its contract for one year; and that if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence. *Mutual Life Insurance Co.* v. *Buford,* 160 Pac., 928; *Clement* v. *Insurance Co.,* 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650; *Thompson* v. *Fidelity Insurance Co.,* 116 Tenn., 557, 92 S. W., 1098, 6 L. R. A. (N. S.), 1039, 115 Am. St. Rep., 832; *Wright* v. *Mutual Ben. Assn.,* 118 N. Y., 237, 23 N. E., 186; 6 L. R. A., 731, 16 Am. St. Rep., 749."

In *Ramsey* v. *Old Colony Life Insurance Co.,* supra, the court said:

"It is true that the cause of action upon the policy accrues upon the death of the insured and the policy then becomes payable according to its terms, but the terms of the contract are not changed by the death of the insured. The right to contest the policy does not thereby become an absolute, unlimited right, but it is still controlled by the provision of the contract that it must be exercised within one year from the date of the policy. The company is not relieved from the obligation of its contract to ascertain all the facts material to its liability and cancel or rescind the contract within that time or be barred from thereafter contesting the liability. The death of the insured neither enlarged or abridged the appellant's right. It was still entitled to make any defense or take any action necessary to enforce its rights. The right to do so was as complete as in the insured's lifetime and was subject to the same limitation. The right of the company to defend against the policy is no greater than the right of the beneficiary to collect the money, and either right may be lost by mere lapse of time—the latter by virtue of the statute of limitations, the former by the limitations established by the contract. The rule in regard to the construction of ambiguous language has no application. The language is not ambiguous. It admits of no reasonable construction, as the courts have said in the cases already cited, other than that the company may have one year, and no more, for investigation of the questions material to its risk, and if it does not within that time, either as plaintiff or defendant, contest the policy, it cannot do so afterward. Such contest can be made only by proceedings in court

to which the insurer and the insured, or his representatives or beneficiaries, are parties. *American Trust Co.* v. *Life Ins. Co. of Virginia,* supra; *Mutual Life Ins. Co.* v. *Buford,* supra."

In support of its contention that the rights of the parties became fixed upon the death of the insured, defendant has cited the cases of *Thompson* v. *Insurance Co.,* 116 Tenn., 557, 92 S. W., 1098, 6 L. R. A. (N. S.), 1039, 115 Am. St. Rep., 823; *Jefferson Standard Life Insurance Co.* v. *Smith,* 157 Ark., 499, 248 S. W., 897; *Jefferson Standard Life Insurance Co.* v. *McIntyre et al.,* rendered by the United States District Court of Florida on December 21, 1922, reported in 285 Fed., 570.

The case of *Thompson* v. *Insurance Co.,* supra, has no bearing upon the question under consideration. In that case the insured had defaulted in the payment of his premiums. The insured died on January 14, 1905, and was at the time in default in the payment of the premium that was due on December 30, 1904. It appeared that defendant insurance company had accepted premiums after they were due, and it was the contention of the plaintiff Thompson that, by an habitual course of dealing, the insured was justified in believing that the insurer would not insist upon the forfeiture of the policy for the failure to pay premiums at maturity, but this court held that the facts were insufficient to establish such course of dealing. In holding that, while the insured was in default in the payment of his premiums; there was no insurance, and, if he died without having paid his premiums, he was not protected by the insurance, the court quoted from *Carlson* v. *Supreme Council,* 115 Cal., 466, 47 Pac., 375, 35 L. R. A., 643, the quotation set out in defendant's brief to

the effect that the rights of the parties became fixed upon the death of the insured upon the question of nonpayment of premiums.

In *Thompson* v. *Insurance Co.*, supra, the court said:

"The policy provides that, after three years, if the payments required shall have been made when due, the policy shall be incontestable. This only means that it shall be incontestable for causes other than the nonpayment of premiums, but does not in anywise relieve the insured from the payment of his premiums, but, on the contrary, expressly stipulates that they shall be kept up and paid when due, during the twenty-years life of the policy."

In the case of *Jefferson Standard Life Insurance Co.* v. *Smith,* supra, the incontestable clause contained in the policy sued on was as follows:

"After this policy shall be in force for one full year from the date hereof it shall be incontestable for any cause except for nonpayment of premiums."

In the case of *Standard Life Insurance Co.* v. *McIntyre et al.,* supra, the incontestable clause in the policy sued on was as follows:

"After this policy shall have been in force for one full year from the date hereof, it shall be incontestable for any cause except for nonpayment of premiums."

It will be noted that the incontestable clauses in the policies sued on in both of these cases were substantially the same, and, as a matter of fact, the same company was involved in both suits.

The incontestable clause of the policies involved in the suit at bar provides:

"This policy shall be incontestable after one year from the date of its issue, except for nonpayment of premiums."

It will be noted that there is a marked difference in the two clauses. This difference consists in language:

"After this policy shall have been in force for one full year from the date hereof."

In the case of *Jefferson Standard Life Insurance Co.* v. *McIntyre,* supra, the court said:

"Are the policies 'in force,' as contemplated in the clause, after the death of the assured occurring prior to one year from the date of the policy? It seems to me that the proper construction of this clause is that it contemplates the continuance in life of the assured during that year; else why except the nonpayment of premiums?"

It is apparent that the holding of the court in *Standard Life Insurance Co.* v. *Smith,* supra, was controlled by the same consideration. These cases are not, therefore, controlling in the suit at bar.

Defendant contends that it could not have enjoined plaintiff's suit, which was instituted within the contestable period, in view of the holding of this court in *The Sailors* v. *Woelfle,* 118 Tenn., 755, 102 S. W., 1109, 12 L. R. A. (N. S.), 881. In that case this court said:

"*Hamilton* v. *Cummings,* 1 Johns. Ch. (N. Y.), 517, is possibly the leading case in America on this subject. In the course of his opinion, Chancellor Kent reviews the leading cases in England up to that time, and shows that there had been much fluctuation in the rulings of the various courts with regard to the exercise of this particular jurisdiction. He concludes his examination as follows: 'Perhaps the cases may all be reconciled on this general principle: That the exercise of this power is to be regulated by sound discretion as the circumstances of the individual case may dictate, and that the resort to equity,

to be sustained, must be expedient either because the instrument is liable to abuse from its negotiable nature, or because the defense not arising on its face, may be difficult or uncertain at law, or from some other special circumstance peculiar to the case and rendering a resort highly proper and clear of all suspicion of any design to promote expense and litigation.'

"We doubt whether the principle controlling the interference of equity courts at the instance of parties complaining, with a view to the cancellation of instruments, has been anywhere more clearly or satisfactorily stated than in this case."

We think there was a special circumstance existing, which was peculiar to the case at bar, that would have given a court of equity jurisdiction if defendant had desired to take affirmative action to rescind or have the policies canceled after plaintiff's suit was instituted on March 5, 1920. All that would have been necessary to have given a court of equity jurisdiction would have been to have alleged in the bill that, on account of the incontestable provisions of the two policies providing that they could not be contested after one year, it was necessary for defendant to file its bill in a court of equity to enjoin the suit at law, as the policies, by their terms, would become incontestable before defendant could present its defense in the action at law.

By its second assignment of error, defendant insists that, plaintiff having failed to plead the incontestable clauses in said policies, he waived the same, and could not take advantage of and rely on said clauses in his motion for a directed verdict.

As before stated, plaintiff made profert of the two policies in his declaration. The policies were introduced in evidence by the plaintiff and the first page of one of the policies was read, and it was agreed that both of the policies were identical and that both of them would be considered.as read. The incontestable clauses were read to the court and jury.

In *Bomar* v. *Hagler,* 7 Lea, 89, this court said:

"The rule is that a statute which bars the remedy only must be pleaded, but a statute which cuts off the right need not be pleaded, but may be relied upon as a protection if the facts appear; as, for instance, the statute which gives a title to personal property. (*Kegler* v. *Miles, M. & Y.,* 426), or a title to land (act of 1819).

"The reason is that a statute which merely bars the remedy may be answered by a new promise, or something that will take the case out of the statute (*Allen* v. *Word,* 6 Hum., 284) and therefore must be pleaded, in order to give the opportunity to reply. But a statute which cuts off the right or vests the title absolutely in the defendant and to which there is no answer, need not be pleaded, for it cannot be answered."

In the case of *Waterhouse* v. *Sterchi Bros, Fur. Co.,* 139 Tenn., 117, 201 S. W., 150, this court, said:

"The suit was based on the note. That instrument was not copied into the declaration so as to set forth the waiver, but profert was made of it, that being a formula in pleading whereby the pleador professes to bring into court an instrument to be shown to the court and to his adversary. It is true that mere profert of a note does not make the instrument, the foundation of the action, a part of the

declaration, when that pleading is tested for sufficiency by a demurrer. *Insurance Co.* v. *Thornton,* 97 Tenn., 1, 15, 40 S. W., 136. The court is confined to the face of the declaration in such test. . . ."

"Now the question arises: Is the case to be deflected adversely by reason of the fact that the note is brought into the record by proof rather than by way of oyer granted? What substance can there be to support a divergent ruling? It would seem that, if the note becomes a part of the record by way of sworn testimony, it should not weigh less in plaintiff's favor than when it is imported into a pleading of record by way of a *quasi*-fiction.

"If, then, the proof had shown the note to contain the waiver, the motion in arrest of judgment could not be sustained for the reason that defendant Waterhouse's liability would not be conditional, upon his being given notice of protest, but absolute in that regard."

We think the holding of the above case directly settles the question contrary to defendant's contention, and it was not, therefore, necessary for plaintiff to expressly plead the incontestable clauses contained in said policies. When the policies were introduced by the plaintiff in evidence, and the incontestable clauses read to the court and jury, they became a part of the record as effectively as if they had been relied on in a pleading, and plaintiff could rely on them in his motion for a directed verdict.

The foregoing questions being conclusive of the case, the defense of fraud on the part of the insured in procuring said policies becomes immaterial.

The judgment of the court of civil appeals is therefore affirmed, with costs.

ON PETITION TO REHEAR.

This case is before the court on defendant's petition to rehear on one point, viz. that, plaintiff's suit having been brought within the contestable period provided in the policies sued on, this suspended the running of the period within which defendant might contest.

It is said that this question was overlooked by the court and was not passed on in its opinion filed on a former day of the term.

The question was considered by the court in the determination of the case, but does not appear to have been directly discussed in the opinion filed.

It is defendant's insistence that the incontestable clause contained in the policies sued on is a statute of limitation, and, the plaintiff having brought his suit before the statute run, this suspended the running of the statute, and defendant could present its defenses against the policies after that time in the orderly progress of the case. In support of this contention it cites the case of *Lewis* v. *Turnley,* 97 Tenn., 197, 36 S. W., 872.

In that case suit was instituted upon a note. Defendant filed an answer and a cross-bill, and in the cross-bill contended that when the property was sold, for which the note was given as a part of the consideration, the vendor agreed that certain insurance upon the improvements on the premises was to be transferred, and that the vendor agreed that, if the property burned before the insurance was transferred, he would be liable for the insurance. The vendor failed to transfer the insurance and the insured's property burned. The plaintiff interposed the statute of limitations to the set-off of defendant, and the

court held that, since the claim of the defendant was a proper set-off and was evolved from the consideration of the original contract the filing of the bill saved the bar of the statute.

The other cases cited by defendant involved a similar question.

In *Clark* v. *Duncanson*, 79 Okl., 180, 192 Pac., 806, 16 A. L. R., 315, plaintiff commenced an action within twelve months of the recording of his tax deed, to quiet title. He made the former owner of the property a party defendant. The defendant, after the expiration of twelve months from the recording of the tax deed, filed an answer, entitled the same "Answer and Cross-Petition," in which he assailed, on several grounds, the validity of the tax sale and tax deed, and prayed judgment against the plaintiff for possession and damages. It was held that the so-called cross-petition was a counterclaim, within the meaning of section 4746, Revised Laws 1910, and within the statute of limitations until the claim of the plaintiff is so barred.

We think these cases have no application to the question under consideration. While incontestable clauses in insurance policies have been referred to by some of the decisions as a short statute of limitations, it is not such. It is a contractual limitation, and is not governed by principles applying to statutes of limitations. A similar clause to the one in the policies sued on has been construed in a number of cases.

In *Monahan* v. *Metropolitan Life Insurance Co.*, the court said:

"In case of a breach of warranty . . . the insurer must assert its claim within the two-year period, whether the insured survives that period or not, either by affirma-

tive action or by defense to a suit brought on the policy by the beneficiary within the two years."

In *Ebner* v. *Ohio State Life Insurance Co.,* the court said:

". . . That if, as a result of such investigation or of knowledge otherwise obtained, the insurer desires to contest the policy, appropriate steps to that end, either by defense to an action brought on the policy in case of the death of the insured, or by proper affirmative action, must be taken within the year."

In *Insurance Co.* v. *Peeler,* the court said:

". . . The language admits of no reasonable construction other than that the company reserves to itself the right to ascertain all the matter and facts material to its risk and the validity of its contract for one year; and that if within that time it does not ascertain all the facts and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence."

In *Ramsey* v. *Old Colony Life Insurance Co.,* the court said:

"It admits of no reasonable construction, as the courts have said in the cases already cited, other than that the company may have one year, and no more, for investigation of the questions material to its risk, and if it does not within that time, either as plaintiff or defendant, contest the policy, it cannot do so afterward."

The court further said in that case:

"The death of the insured within the year did not remove the contractual limitation upon the right of the company to contest its liability on the policy, but the fact that, without the fault of the company, there was no party in existence against whom it could begin suit, and that it

148 Tenn.—30

had no power to have an administrator appointed for that purpose, suspended the operation of this provision until an administrator was appointed.

"When the insured died, on April 13, 1917, seven months of the year after the policy was issued had elapsed. The administrator was not appointed until July 19, 1918. After that there was nothing to prevent the defendant from contesting its liability on the policy. Suit was begun against it in November, 1918, but it filed no plea denying its liability upon the policy until May 12, 1919, nearly ten months after the appointment of the administrator, and, excluding the time during which it was prevented from bringing suit by reason of the failure to appoint an administrator, nearly seventeen months after the date of the policy. The plea alleged that knowledge of the falsity of the answers did not come to the defendant until July 1, 1918, but there were several months after its discovery of the fraud and after the appointment of the administrator before the expiration of the year in which it might have filed a bill to cancel the policy. It failed to do so, and by its neglect permitted the incontestable period fixed by the policy, even under the construction which we have given it, to elapse."

These cases are all cited in the opinion of the court heretofore filed in this case.

In *Mutual Life Insurance Co. of New York* v. *Buford,* 61 Okl., 158, 160 Pac., 928, it was said:

"'It seems to be a well-recognized principle of insurance law that a provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such . . . policy other than the defenses excepted in the provision itself. It also

seems to be generally held that such a clause precludes the defense of fraud, as well as other defenses, and that it is not invalid on the theory that it is against public policy, provided the time in which the defenses must be made is not unreasonably short. An examination of the following cases will show that the holding of the courts of this country have been . . . universally that every defense to a policy of insurance embraced within the terms of the "incontestable clause" is completely lost to the insurer, if it fails to make the defense or take affirmative action within the time limited by the policy.' " Citing many authorities.

It is true that in none of these cases suit was brought before the contestable period had expired, but they show the construction that was placed on an incontestable clause, similar to the one in question, and it was held in all of them that the insurer must assert its claim within the period stipulated, either by affirmative action or by defense to a suit brought on the policy, within the contractual period.

The incontestable clause in the policies sued on was written into them by the defendant itself. It was contractual, and the effect of it was to prevent the insurer from interposing as a defense the falsity of the representations of the insured, which might be fraudulent. In other words, defendant said to the insured:

"I will take one year in which to ascertain whether your representations are false, and whether you have been guilty of any fraud in obtaining the contract, and, if within that period, I do not ascertain or discover such falsity and fraud, I agree to make no further inquiry into these matters, and make no defense on account of them."

There was no stipulation for a suspension of the run-

ning of the limitation for any reason. The right of the defendant to contest, except for nonpayment of premiums, was, by the stipulation, foreclosed at the expiration of the period contracted for, notwithstanding plaintiff's suit was brought two days before the limitation expired. The letter of defendant written on January 30, 1920, to plaintiff would indicate that it had knowledge or information of the insured's alleged misrepresentations on that date. which was more than a month before the period of limitation expired, still it took no action to rescind the policies on that ground.

The clause in question being merely contractual, and containing no provision for its suspension in the event suit should be brought by the insured within the limitation, we cannot read such a provision into it. Defendant was therefore precluded from contesting the policies at the time it filed its pleas.

This court, in the case of *Guthrie* v. *Indemnity Association*, 101 Tenn., 643, 49 S. W., 829, held that a contractual limitation of action contained in an insurance policy is not affected by the rules of law governing statutes of limitation. In that case the court said:

- "While it is true the original suit was dismissed for insufficient service of process, and not for any cause concluding plaintiff's right of action, we are of opinion that the statute is wholly inapplicable in the present instance. It clearly refers to statutory, and not to contractual, limitations; for otherwise a statute could be made utterly subversive of contracts executed by parties upon the most deliberate consideration. It was held by the United States supreme court, in *Riddlesbarger* v. *Hartford Ins. Co.*, 74 U. S. (7 Wall.), 258, that 'the contractual limitation is not affected by the fact that a previous action, which was

Humpston v. State Mut. Life Assur. Co.

dismissed, had been commenced within that period, and that the statute of a State which allows a party who suffers a nonsuit in an action to bring a new action for the same cause within one year afterwards, does not affect the rights of the parties in such a case.' This must be true, for, if the contractual limitation is valid, the parties are not bound by the general limitation of the statute, and, for a like reason, they are not bound by the savings of the statute. The question is purely one of contract, and is not regulated by the terms of the statute. 'The rights of the parties,' says FIELD, J., 'flow from the contract. That relieves them from the general limitations of the statute, and, as a consequence, from its exceptions also.' In *Riddlesbarger* v. *Insurance Co.*, 74 U. S. (S. C., 7 Wall.), the court said: 'The action mentioned which must be commenced within the twelve months, is the one which is prosecuted to judgment. The failure of a previous action, from any cause, cannot alter the case. The contract declares that an action shall not be sustained unless such action, not some previous action, shall be commenced within the period designated. It makes no provision for any exception in the event of the failure of an action commenced, and the court cannot insert one without changing the contract.' This view is supported by the cases of *Wilkinson* v. *Insurance Co.*, 72 N. Y., 499; *Arthur* v. *Insurance Co.*, 78 N. Y., 402; *Wilson* v. *Insurance Co.*, 7 R. I., 301; *Insurance Co.* v. *Burr*, 94 Pa. St., 345; *Insurance Co.* v. *Burr*, 128 Pa. St., 386; *Hocking* v. *Insurance Co.*, 130 Pa. St., 170; Ostrander on Insurance, sections 410, 411; 2 Beach on Insurance, sections 1258-1265; Joyce on Insurance, section 3205."

The petition to rehear will therefore be denied.