QUINN v. CATHOLIC KNIGHTS.

(*Jackson.* May 15, 1897.)

1. LIFE INSURANCE. *Invalid assignment of benefit certificate.*

An assignment by a member of a benefit society of a certificate payable to himself, issued, after his suspension, in place of the original certificate made payable to his wife, in pursuance of an agreement that the assignee, who was in no way related to or interested in the continuance of the life of the member, should pay to him the amount already paid by him and assume and pay all subsequent dues and assessments, is void as against public policy. (*Post, pp. 81–86.*)

Cases cited and approved: 9 Fed. Rep., 249; 120 Ill., 121.

2. SAME. *Amount recoverable by original beneficiary of assignee under illegal contract.*

The original beneficiary in a benefit certificate may recover from one to whom the certificate has been transferred by a void assignment, and to whom the full amount of the certificate has been paid, the difference between such amount and the money actually paid by the assignee in keeping the insurance alive, but no more. (*Post, pp. 86, 87.*)

Case cited and approved: 104 U. S., 775.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

W. W. GOODWIN for Quinn.

WM. M. RANDOLPH & SONS for Catholic Knights.

BEARD, J. Thomas Quinn was a member of the order of Catholic Knights of America, and there was issued to him, as such, a beneficial certificate, in which this institution agreed to pay to his wife, Mary Quinn, $2,000, at his death, upon the condition that he continued, during life, to pay into the order the dues, assessments, etc., required under its constitution. Subsequently, finding the payments which were necessary to keep him in full fellowship in the order, were becoming too burdensome, he proposed to defendant, Carter, if he would repay to him (Quinn) the sum of fifty-five dollars, already paid in by him, and agree to assume and discharge all dues and assessments which might thereafter accrue against him on account of his membership, that, his wife assenting, he would assign or transfer to him (Carter) the beneficial certificate already issued, or else, delivering to the order the old certificate for cancellation would cause the issuance of a new one, in which Carter should be named as beneficiary. This proposition was taken under advisement by Carter, who had one or more conversations with officers of the order in Memphis as to the legality of such a contract. Finally, becoming satisfied that he could safely do so, he accepted the terms proposed. Thereupon, on the back of the certificate, Quinn gave an order, in writing, to the Supreme Secretary of the Catholic Knights, to issue a new certificate, in lieu of the old, naming Carter as the beneficiary; and to this Mary Quinn gave, underneath, her written

15 P—6

consent. For some reason, undisclosed in the record, this plan, thus agreed upon, was not carried out. Instead, as Quinn was in arrears for one or more of his assessments, it was evidently thought best to enforce against him suspension, as was authorized by a rule of the order, and in this mode work the change, which was to substitute Carter as the beneficiary of the certificate, in the room and stead of Mary Quinn. This is apparent from the testimony in the case, and especially from the minutes of the meeting of the order at which this suspension was effected. The minute on this subject recites as follows: "Mr. P. Quinn was suspended for nonpayment of assessments, reading, at the same time, a letter from the Supreme Secretary on the subject of changing beneficial certificate, it being the only course Mr. Quinn could pursue in the premises."

It is to be observed that at the time of this transaction the laws of this order required the consent, in writing, of the beneficiary named in the certificate to the surrender of the old and the issuance of a new certificate naming another beneficiary. The effect of this suspension, if not the purpose, was to disconnect Mrs. Quinn, without regard to her consent, from the certificate, and thus open up the way, upon Quinn's reinstatement, to a certificate absolutely under his control.

When the suspension occurred Mr. Carter paid the dues and assessments which Quinn had failed to pay, and the latter was reinstated to full member-

ship.   A new certificate was then issued, in which Thomas Quinn was named as beneficiary, and this was at once assigned and delivered to Carter, who at the same time paid to Quinn the small amount of money theretofore expended by him in keeping up his connection with the order.   From that time Carter paid all the dues and assessments which accrued against Quinn up to the time of his death. The sum total of all these payments, as shown by the record, was less than $600.   This assignment of the beneficial certificate to Carter was rested alone on the agreement and consideration above set forth.   He was neither of kin to nor a creditor of Quinn.

After the death of Quinn, his widow, Mary Quinn, qualified as executrix of his estate, and set up claim to this fund.   Over her protest, however, the full sum of two thousand dollars was paid to the assignee.   This bill was filed by the executrix, seeking to recover from Carter this sum, less the amount expended by him in keeping alive the certificate, with the sum added paid by him to reimburse her testator.   The Chancellor dismissed her bill, and she has appealed.

An examination will disclose that there is an irreconcilable conflict among the authorities upon the question whether a person who has taken out a valid policy on his own life, may afterwards assign it to a party who has no interest in that life. Among the cases maintaining the right of the holder of a policy on his own life, taken out in good

faith, to assign it to one without an insurable interest in his life, are: *Murphy* v. *Red*, 64 Miss., 614 (S. C., 58 A. R., 855); *Bloomington* v. *Blue*, 120 Ill., 121 (S. C., 58 A. R., 852); *Mutual Life Ins. Co.* v. *Allen*, 138 Mass., 24 (S. C., 52 A. R., 245); *Businger* v. *Bank*, 75 Wis., 75 (S. C., 58 A. R., 848); *Clark* v. *Allen*, 11 R. I., 439 (S. C., 23 A. R., 496); Succession of Hearing, 26 La. Ann., 326).

On the other hand, denying this right are, among others, the following cases: *Wornock* v. *Davis*, 104 U. S., 775; *Langdon* v. *Union Mutual Life Ins. Co.*, 14 U. S., 273; *Franklin* v. *Hazzard*, 41 Ind., 116 (S. C., 13 A. R., 313); *Franklin* v. *Sefton*, 53 Ind., 380; *Missouri* v. *Sturges*, 18 Kan., 93 (S. C., 26 A. R., 761); *Boyse* v. *Adams*, 81 Ky., 368; *Helmstag's Admrs.* v. *Miller*, 76 Ala., 183 (S. C., 52 A. R., 316); *Downy* v. *Hoffer*, 110 Pa. St., 109; *Hoffman* v. *Hoke*, 122 Pa. St., 377; *Price* v. *Knights of Honor*, 68 Tex., 361.

Those Courts which sustain such assignments do it upon the ground that a policy of insurance upon one's life stands on the same footing with any other chose in action, and, if valid in its inception, is equally valid in the hands of the assignee. The Courts which decline, however, to recognize those assignments, rest their conclusions on public policy, holding that the title of no assignee of such a policy should be sustained when his interest lies not

in the prolongation of the life insured, but rather
in its speedy termination.

It is not necessary for us in this case to range
ourselves with either line of these authorities, for
we do not regard the question upon which they di-
vide as being necessarily presented here, nor is it
at all necessary for us to differ from the many
cases which hold that a party in good faith, both in
old line insurance companies as well as in such a
society as the Catholic Knights of America, may
select a beneficiary who has neither the claim of blood
or debt upon him, and cause the policy or certificate
to be made payable to such party, for that is not
the present case.

The question rather is, will this Court sustain
the title of an assignee where the assignment of the
policy follows upon the negotiations already detailed,
and where the assignee, of his own means, in ful-
fillment of a promise contemporaneous with its issu-
ance, keeps it alive in his own interest, and simply
as a matter of pecuniary profit.

We have no hesitation as to the proper answer
to this question. Such a transaction is purely spec-
ulative on the part of the assignee, entered upon by
him as a wagering interest, from which the largest
profit is to be derived from the termination of the
insured's life, and the heaviest loss to accrue from
its long continuance. A transaction of this character
is obnoxious to the law, as violative of a sound

public policy, and should not be sustained. *Brock-way* v. *Mut. Ben. Life Co.*, 9 Fed. Rep., 249.

As we view the transaction, it was, in effect, a purchase of a life policy on 'the life of Quinn, by Carter, for a small cash consideration and the agreement to take care of future payments, where the value of the speculation depended upon the termination of that life, thus radically differing from a case where the assured, of his own motion, takes a risk on his own life, and, notwithstanding its assignment, keeps it alive by his own means. *Bloomington* v. *Blue, supra,* is one of the cases holding to the assignability of a policy as a mere chose, yet it recognizes the distinguishing principle on which we rest our conclusion in this case. The Court there say: "Public policy forbids one person, who has no interest in the continuance 'of the life of another, from speculating on that life by procuring a policy of insurance," and the policy in that case was saved to the beneficiary because "it did not appear that Blue had any instrumentality whatever in procuring the policy on the life of Bailey, or that he ever, paid any portion of the premiums to procure the policy, or kept it in force."

The conclusion reached by us, however, does not invalidate the insurance itself. Quinn had an insurable interest in his own life, and, under the rules of this society, his membership entitled him to the beneficial certificate which was issued. The order of Catholic Knights, recognizing it as a binding obligation on its part, has paid over the proceeds of this

certificate to defendant, Carter. This being so, what are the rights of the complainant as against him?

While the law, under the facts disclosed, discountenances the assignment under which these proceeds were collected by the assignee, yet, this is alone on the ground of public policy. "No fraud or deception upon anyone was designed by the agreement, nor did its execution involve moral turpitude." *Wornock* v. *Davis, supra.* It is a transaction from which a Court of Chancery is not necessarily repelled so as to be unable to adjust the respective equities of the parties. "It is one which must be treated as creating no legal right to the proceeds of policy beyond the sums advanced upon its security, and the Courts will therefore hold the recipient of the moneys beyond these sums to account to the representatives of the deceased." *Id.*, 775. It was lawful for Carter to advance the money to reimburse Quinn, and to keep alive this insurance. What was unlawful was that he should make these advancements upon a stipulation that they should be considered an investment on which he was to realize large speculative profits. In the words of the Supreme Court of the United States, in the case of *Wornock* v. *Davis, supra,* the assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund the sums, with interest.

The result is, the decree of the Chancellor is reversed, and decree will be entered here in accordance with this opinion.