**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY,**
**Plaintiff/Appellant,**

**v.**

**Hershell L. KINNAIRD, and April L. Kinnaird, and Chevy L. Kinnaird, minor children of Pamela Kinnaird, deceased, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Nov. 17, 1993.

Application for Permission to Appeal
Denied by Supreme Court
March 21, 1994.

John E. Acuff, Cookeville, J.O. Bass, Jr., Bass, Berry & Sims, Nashville, for plaintiff-appellant.

Bobby James Ellis, Gainesboro, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

This is a suit for declaratory judgment as to the liability of plaintiff to pay the $100,000 face amount of a policy upon a policy of life insurance upon the life of Pamela Kinnaird, who was the victim of a murder as to which her husband and primary beneficiary is a convicted accessory. As indicated in the caption, the defendants are the children of the deceased.

The complaint alleged the husband fraudulently procured the insurance policy with the intent to have his wife murdered to collect the proceeds. The answer denied such fraudulent procurement.

The Trial Court held the policy valid, ordered payment to the defendants, and denied the award of penalty for bad faith.

On appeal, the appellant-insurer presents a single issue as follows:

Is a policy of life insurance void *ab initio* when the husband, beneficiary who helped secure the policy on his wife, and who wrote the check for the first premium on his account had already made a firm plan to kill the insured for the insurance proceeds and who did not disclose such obviously additional risk to the Insurer, and in fact, before the policy was delivered, secured her murder.

The appellees present two issues as follows:

1. Should an insurance policy, issued to a wife, against whom no fraud is alleged, when she materially changed her position by cancelling a credit life policy to take out the subject policy, the subject policy being paid for with marital property, the amount of the policy being increased at the suggestion of the plaintiff's agent, be declared void *ab initio* due to the fact that her husband may have been intending to have her murdered when the policy was issued?

2. Is the plaintiff guilty of bad faith in failing to pay the policy in question?

It is uncontroverted that, prior to the issuance of the subject policy, the agent of the plaintiff had sold to deceased and her husband a policy of credit life insurance in connection with a real estate loan; that said policy had lapsed; that deceased and her husband were interested in renewing the credit life insurance, but plaintiff's agent recommended ordinary life insurance instead; that on June 6, 1988, the agent visited deceased and her husband and procured two applications—one from deceased for $100,000 insurance naming her husband as beneficiary, and one from the husband of deceased for $100,000 insurance naming deceased as beneficiary; that the husband signed and delivered to the agent a check on his bank account for the two policies; and that the policies were duly issued by plaintiff.

It is also uncontroverted that, prior to the June 6, 1988 applications, the husband of deceased did in May, 1988, seek to hire a person to kill his wife, and ultimately hired another person who did kill her.

Defendants concede that the husband has no right to the proceeds of the policy because of T.C.A. § 31–1–106 (forfeiture for felonious killing). However, defendants insist that they are entitled to recover because neither

they nor their mother were parties to the fraudulent conspiracy of the husband.

Defendants argue that the intents and actions of the husband do not defeat their claim because the policy in question was issued upon the application signed by deceased and that the policy was the property of deceased who had the power to change the beneficiary at will. Defendants also argue that the bank account on which the check was drawn to pay for the policy was "marital property," even though legal title thereto was in her husband.

In *First Tennessee Bank v. U.S.F. & G. Co.,* Tenn.App.1991, 829 S.W.2d 144 (1991), mortgagees sought recovery under the mortgagee clause of a fire policy. Before the policy was issued, the insurer contacted the mortgagees for information, but mortgagees did not disclose their knowledge of a threat to burn the house. This Court held that the mortgagees could not recover because of the failure of "insureds" to disclose.

Plaintiff argues that the husband, as named beneficiary, was the "insured," and his failure to disclose his fraudulent plan invalidates the policy.

■ A mortgagee named in a fire policy is not merely a "beneficiary" of the policy, the mortgagee has a substantial interest in the insured property and is therefore properly designated as an "insured."

■ The beneficiary named in a life insurance policy does not have the same interest in the policy as a mortgagee in a policy insuring property. However, a person who is a named beneficiary or one who expects to benefit from a life insurance policy may be guilty of fraud in the procurement of the policy. In *Columbian Mutual Life Insurance Company v. Martin, et al,* 175 Tenn. 517, 136 S.W.2d 52 (1940), the insurer sued to avoid payment upon a policy of insurance upon the life of a man who was murdered. The employer of deceased, one "Martin," induced deceased to apply for the policy which was paid for by Martin and kept in his possession, although it was payable to the estate of deceased. Martin and the administratrix were named as defendants in the suit to avoid the policy. The Trial Court and this Court dismissed the suit to avoid the policy.

The Supreme Court granted certiorari and held:

... In general, we think all the evidence offered was competent which tended to show fraud of the insured and of one Martin, hereafter mentioned, in the making of this contract. *New York Mutual Life Ins. Co. v. Armstrong,* 117 U.S., 591, 6 S.Ct., 877, 29 L.Ed., 997.

. . . .

On February 17, 1938, George met his death. He was killed by two negroes, hired by Martin to commit the murder. Martin and the two negroes have since been tried, convicted, and executed for the crime.

. . . .

There is no doubt upon this record that Martin procured these policies or induced George to procure them with the intention on Martin's part of having George murdered and getting the proceeds of the policies for himself. Such being the facts, the theory of complainant's bill herein is that the policy it seeks to have cancelled was void from its inception by reason of fraud practiced on complainant; that it was void as a wager policy; and that public policy denies any recovery thereon.

. . . .

... In general there is no public policy which prevents recovery on a contract of insurance when the insured is murdered, unless benefits of the contract go to the murderer. *Cleaver, et al v. Mutual Reserve Fund Life Association* [1892], 1 Q.B., 147; *Sharpless v. Ancient Order of United Workmen,* 135 Minn., 35, 159 N.W., 1086, L.R.A., 1917B, 670, and cases collected in Notes, 3 L.R.A., N.S., 726, and L.R.A., 1917B, 671.

However, we think the contract of insurance before us should be avoided for fraud. We do not find that George was guilty of any fraud in the transaction. . . .

. . . .

Martin, of course, was guilty of fraud in bringing about the execution of this contract between George and the complainant, with the intent, subsequently carried out,

of murdering George and getting the benefit of the policy.

. . . .

A person, though innocent, cannot avail himself of any advantage obtained by the fraud of another, unless there is some consideration moving from himself. *Huguenin v. Baseley,* 14 Ves., 273.

In a later English case the Vice Chancellor said:

This case is brought within the broad principle, that no one can avail himself of fraud. As it was held in *Huguenin v. Baseley,* 14 Ves., 273, and the other cases cited in argument, where once a fraud has been committed, not only is the person who has committed the fraud precluded from deriving any benefit from it, but every other person is so likewise, unless there has been some consideration moving from himself. Where there has been consideration moving from a third person, and he was ignorant of the fraud, there such third person stands in the ordinary condition of a purchaser without notice; but where there has been no consideration moving from himself, a third person, however, innocent, can derive no sort of benefit or advantage from the transaction. *Scholfield v. Templer,* Johns., 156.

This rule of the English cases is referred to in Williston on Contracts (Revised Edition), Vol. 5, section 1518(2), where a number of American decisions are cited as in accord.

In Restatement of the Law of Contracts, section 477, the Comment is as follows:

As between the original parties to a transaction induced by the fraud or material misrepresentation of a third person, the injured party has power of avoidance unless the other party is not only ignorant of the fraud or misrepresentation when he enters into the transaction, but has either parted with value or has changed his position materially in reliance on the transaction. A donee cannot conscientiously retain an advantage obtained from another because of a third person's misconduct, even if the donee neither knew nor had reason to know of it.

The foregoing authorities which clearly embody a sound rule seem decisive against any claim of George's estate to benefits under this insurance policy. Martin doubtless expected to get the benefit of the policy himself by a subsequent assignment, a claim of equitable assignment, a will, or otherwise. The effect of Martin's fraud, however, does not depend on any interest he had or might acquire in this policy of insurance.

175 Tenn. at pp. 520–525, 136 S.W.2d 52.

■ The foregoing appears to be dispositive of this appeal. However, defendants seek to distinguish the authority on the theory that the funds used to purchase the policy were "marital property," and thereby deceased contributed to the consideration for the issuance of the policy so as to entitle her children to its benefits. Whatever the equitable status of the bank deposit, its legal control was in the husband who exercised that control to further his fraudulent scheme. Without the exercise of such control by the husband, the policy would never have been issued. The uncontroverted evidence shows that the husband procured a policy of insurance payable to himself with funds within his control.

Defendants assert that the deceased contributed a consideration by accepting the policy as a substitute for the previously lapsed credit life policy. No consideration is furnished by the waiver of a non-existent right.

■ Where a person who expects to benefit from a policy procures it without disclosing his plan to cause the murder of the insured, the policy is void for fraudulent concealment in spite of the innocence of the insured, who signs the application and those who claim the proceeds. *Columbian v. Martin, supra.*

The judgment of the Trial Court is reversed. Costs of this appeal are taxed against the appellees. The cause is remanded to the Trial Court for entry of judgment relieving the plaintiff of liability on the sub-

ject policy and for any further, necessary proceedings.

Reversed and Remanded.

LEWIS and CANTRELL, JJ., concur.