IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 16, 2013

## TYRONE SPATES v. TRACY HOWELL and ROBERT PRESTON

**Direct Appeal from the Circuit Court for Hardeman County**
**No. CC12CV17     J. Weber McCraw, Judge**

---

**No.  W2012-02743-COA-R3-CV - Filed May 16, 2013**

---

Appellant appeals the dismissal of his complaint against the prison's medical staff for failure to properly diagnose and treat him.  The trial court determined that Appellant prisoner's claims were barred by the applicable statute of limitations, which was not tolled by operation of Tennessee Code Annotated Section 29-26-121.  Appellant also appeals the trial court's findings concerning his status as an indigent person.  Discerning no reversible error, we affirm and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Tyrone Spates, Whiteville, Tennessee, Pro Se.

William B. Mauldin and James I. Pentecost, Jackson, Tennessee, for the appellees, Tracy Howell and Robert Preston

**OPINION**

At all times relevant, Appellant Tyrone Spates was an inmate incarcerated at the Whiteville Correctional Facility ("WCF").  On August 9, 2012, Mr. Spates filed the instant lawsuit in the Circuit Court of Hardeman County.  By his complaint, Mr. Spates alleges that, on March 26, 2011, he went to the WCF medical department "because he could not breathe."  Mr. Spates asserts that Nurse Tracy Howell informed him that he had indigestion and that she gave him antacids before he returned to his cell.  The next day, Mr. Spates returned to the medical department with the same complaint and was again seen by Nurse Howell.  At

this time, Nurse Howell allegedly gave Mr. Spates a stronger antacid and "sent him back to his cell . . . without any tests or further medical attention." Again, on March 29, 2011, Mr. Spates returned to the medical department, complaining of extreme pain and inability to breath. Mr. Spates alleges that he was held in a medical holding cell for three days without proper treatment, and that the Health Administrator for the WCF, Robert Preston (together with Nurse Howell, "Appellees"), approved Mr. Spates being held in the medical holding cell without treatment. During this time, Mr. Spates contends that he reported the same complaints, on March 31, 2011, to a Nurse Carolyn. Although Mr. Spates's complaint names "Ms. Carolyn" as a party-defendant, it does not list a last name for Nurse Carolyn, and there is no evidence that Mr. Spates obtained service of process on this party. Regardless, Mr. Spates's complaint states that, on April 1, 2011, he spoke with "Dr. Brittling," who is not a party to this appeal. Dr. Brittling allegedly stated that she would order some heart tests, which were not actually performed until sometime on April 8, 2011. On that date, Dr. Brittling allegedly discovered that Mr. Spates was suffering from cardiac arrhythmia. Mr. Spates was sent to the hospital, where he was diagnosed and treated on April 8, 2011.

Mr. Spates's complaint alleges negligence on the part of Appellees in the medical care and treatment rendered to him at the WCF. Concurrent with his complaint, Mr. Spates filed a Tennessee Supreme Court Rule 29 uniform affidavit of indigency, an "Inmate Affidavit," pursuant to Tennessee Code Annotated Section 41-21-805, and an "Inmate Trust Fund Certification Balance" form pursuant to Tennessee Code Annotated Section 41-21-807.

On September 12, 2012, Appellees filed a motion to dismiss the complaint, alleging that Mr. Spates's claims were barred by the applicable statute of limitations, Tennessee Code Annotated Section 28-3-104. A hearing on the motion to dismiss was set for November 2, 2012. On October 10, 2012, Mr. Spates filed a motion for transport order for leave to attend the November 2 hearing. On the same day, Mr. Spates also filed an "answer" in opposition to Appellees's motion to dismiss. In relevant part, Mr. Spates argues that the one year statute of limitations should be tolled based upon his assertion that he was "mentally and physically incapacitated from April 8, 2011 to May 13, 2011," and that he only discovered "the occasion, the manner, and the means by which a breach of duty occurred . . . and the identity of the defendants who breached the duty" on April 8, 2011, "when he received a proper diagnosis from the doctor at the hospital." Mr. Spates further states that, in accordance with Tennessee Code Annotated Section 29-26-121, discussed *infra*, "on April 10, 2012," he sent to each defendant a "written notice of claim, which [allegedly] gave [Mr. Spates] an additional 120 days to file his lawsuit." Accordingly, Mr. Spates states that he "should be given the opportunity to amend his complaint to include the documents required by statute [i.e., Tennessee Code Annotated Section 29-26-121]." There is no evidence that the trial court made a specific ruling on Mr. Spates's request to amend his complaint; however, as discussed below, failure to include the Tennessee Code Annotated Section 29-26-121 notice

was a ground for dismissal of his case. Inferentially, then, Mr. Spates's request to amend was denied.

On November 19, 2012, the trial court entered an order, granting Appellees's motion to dismiss, denying Mr. Spates's motion for transport and his motion to be appointed counsel. In relevant part, the trial court's order states that:

> On October 8, 2012, after reviewing the various documentation seeking pauper status and Uniform Civil Affidavits of Indigency and supporting documentation filed by [Mr. Spates], this Court made a determination that . . . Tyrone Spates, was not an indigent person eligible to file upon a pauper's oath because his affidavit was incomplete and his affidavits contained conflicting statements. This determination was filed . . . on October 11, 2012. Accordingly, the Court has previously found [Mr. Spates] to not be a pauper and the filing fee for this case has remained unpaid.[1]

Concerning the grant of Appellees's motion to dismiss, the court's order states:

> Moreover, the Court finds that even if [Mr. Spates's] case were allowed to proceed on its merits, that the case fails to state a claim upon which relief can be granted. [Mr. Spates] states that he discovered his alleged injuries on April 8, 2011. [Mr. Spates] alleges that he was mentally and physically incapacitated from April 8, 2011 to May 13, 2011 and that the statute of limitations was tolled during that time. His complaint was filed on or about August 9, 2012—more than one year past the time he discovered his injuries or the tolling period.

The trial court also specifically found that Mr. Spates had failed to comply with the notice requirements for health care liability claims as codified at Tennessee Code Annotated Section 29-26-121. The court specifically found that "[t]he required notice with affidavit and certificate of mailing were not attached to [Mr. Spates's] complaint as required by the statute." The court also denied Mr. Spates's motion for transport, finding that he "does not have an absolute right to be present at each stage of the proceedings," and that the court "can

---

[1] The October 11, 2012 determination of indigency is contained in the record and provides that Mr. Spates "is not an indigent person eligible to file upon a pauper's oath because [of an] incomplete affidavit and conflicting statements on affidavits."

make a determination on these matters based upon the pleadings." In addition, the trial court denied Mr. Spates's request for appointment of counsel, finding that "the contents of [Mr. Spates's] pleadings indicate that he is able to represent himself and has access to adequate legal materials."

Mr. Spates filed a timely notice of appeal. However, upon review of the record, this Court entered an order, on January 9, 2013, directing Mr. Spates to either post proper bond for the appeal, or to show cause why the appeal should not be dismissed. Mr. Spates responded by filing an affidavit of indigency, pursuant to Tennessee Code Annotated Section 41-21-805. Upon review of the affidavit, this Court entered an order, on February 19, 2013, allowing Mr. Spates to proceed *in forma pauperis* in this appeal.

Mr. Spates raises several issues for review as set out in his appellate brief. After reviewing the record, however, this Court concludes that there are two dispositive issues, which we state as follows:

> 1. Whether the trial court erred in granting Appellees' motion to dismiss on the ground that the applicable statute of limitations was not tolled and had expired.

> 2. Whether the trial court erred in finding that Appellant was not an indigent person.

Before turning to the issues, we first note that we are cognizant of the fact that Mr. Spates has proceeded *pro se* throughout these proceedings. It is well settled that *pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere. As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App.

2003)).

## **Motion to Dismiss**

A motion filed under Rule 12.02(6) of the Tennessee Rules of Civil Procedure "is an appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 455–56 n.11 (Tenn. 2012) (citing *Hawk v. Chattanooga Orthopaedic Grp., P. C.*, 45 S.W.3d 24, 28 (Tenn. Ct. App. 2000); 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice § 11:3, at 857–58 (2011 ed.)). However, this type of motion "tests only the legal sufficiency of the plaintiff's complaint," not the strength of the plaintiff's proof or evidence. *Id*. at 455 (citing *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009)). Thus, we resolve a motion to dismiss by an examination of the pleadings alone. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id*. (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). At this early stage of the proceedings, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id*. (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). The motion to dismiss should be granted "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id*. (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). This is because we are "assessing the sufficiency of a single document filed at the very beginning of a case," and "[o]ur motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded." *Id.* at 437.

On appeal, a trial court's legal conclusion regarding the adequacy of the complaint is reviewed *de novo*. *Webb*, 346 S.W.3d at 426. Likewise, "[t]he determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review *de novo* with no presumption of correctness." *Redwing*, 363 S.W.3d at 456 (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001)).

As set out in its order, *supra*, the trial court dismissed Mr. Spates's case based upon its conclusion that the one-year statute of limitations had expired. "Statutes of limitations promote fairness and justice." *Redwing*, 363 S.W.3d at 457 (citing *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). They "reflect 'a societal choice that actions must be brought within a certain time period.'" *Id*. (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 532 (Tenn. 2005)). "They are based on the presumption that persons with the legal

capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Id*. (citing *Hackworth v. Ralston Purina Co.*, 214 Tenn. 506, 510, 381 S.W.2d 292, 294 (Tenn. 1964)).

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing*, 363 S.W.3d at 457. "The length of the limitations period is perhaps the most straightforward of the three elements," and it is determined by considering the "gravamen" of the complaint. *Id*. In the instant case, it is undisputed that the applicable statute of limitations is one year. Tenn. Code Ann. §28-3-104.

The second component, the concept of accrual, "relates to the date on which the applicable statute of limitations begins to run." *Redwing*, 363 S.W.3d at 457 (citing *Columbian Mut. Life Ins. Co. v. Martin*, 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has either actual or constructive knowledge of a claim. *Id*. at 459.[2] However, the discovery rule does not allow the plaintiff to delay filing suit until he or she knows the full extent of his or her damages, or the specific type of legal claim he or she has. *Id*. Constructive or "inquiry" notice occurs "when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct." *Id*. (internal quotation omitted). In other words, "inquiry notice 'charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" *Id*. (quoting *Sherrill v. Souder*, 325 S.W.3d 584, 593 n.7 (Tenn. 2010)). Once the plaintiff "gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run." *Id*.

As discussed above, in his complaint, Mr. Spates alleges that his injuries occurred

---

[2] Under the traditional accrual rule, a cause of action accrued and the applicable statute of limitations began to run when the plaintiff had a cause of action and the right to sue, even though the plaintiff may have had no knowledge of his or her right to sue, or the facts out of which that right arose. *Redwing*, 363 S.W.3d at 457. However, as time passed, it became apparent that the policies furthered by statutes of limitations should give way when the interests of justice would be served by permitting the pursuit of legitimate claims. *Id*. at 458. As a result, "courts and legislatures began to recognize exceptions to the traditional accrual rules that 'take the sting out of a statute of limitations for equitable reasons.'" *Id*. (quoting Adam Bain & Ugo Colella, *Interpreting Federal Statutes of Limitations*, 37 Creighton L. Rev. 493, 502 (2004)). In 1974, the Tennessee Supreme Court adopted the "discovery rule", in response to the harsh results of the traditional accrual rule, in circumstances in which the injured party was unaware of the injury. *Id*. In short, "the discovery rule was developed to prevent plaintiffs from being barred from filing a claim before they even knew it existed." *Young v. Enerpac*, 299 S.W.3d 815, 817 (Tenn. Ct. App. 2009).

between March 26, 2011 and April 8, 2011. In his response to the motion to dismiss, Mr. Spates clearly states that: "It was not until April 8, 2011" that he "found out he had some type of cardiac arrhythmia." Moreover, he expressly states that he "discovered or reasonably should have discovered" his injury on April 8, 2011, when his medical condition was diagnosed at the hospital. Accordingly, from his own statements, Mr. Spates discovered his injuries at the latest on April 8, 2011. Therefore, the one-year statute of limitations began to run on April 9, 2011 (Tennessee Rule of Civil Procedure 6.01 states, in relevant part, that "the date of the act, event or default after which the designated period of time begins to run is not to be included" in the computation), and would have expired on April 9, 2012 unless there was a tolling event. This leads us to the third *Redwing* component—whether there is a tolling doctrine that can suspend or extend the running of the limitations period. *Redwing*, 363 S.W.3d at 459.

Turning to that question, Mr. Spates contends that, had he been allowed to amend his complaint to comply with Tennessee Code Annotated Section 29-26-121, the statute of limitations would have been tolled such that the August 9, 2012 complaint would have been timely. Tennessee Code Annotated Section 29-25-121 provides, in relevant part:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> \*                               \*                               \*
>
> (b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.
>
> (c) **When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and**

**statute of repose applicable to that provider**.

*Id*. (Emphasis added).

Tennessee Rule of Civil Procedure 15 governs the amendment of pleadings and Rule 15.01 states that leave to amend pleadings "shall be freely given when justice so requires." Thus, while decisions concerning whether to permit an amendment are discretionary, "Tenn. R. Civ. P. 15.01 substantially lessens a trial court's discretion to deny a requested amendment." ***Hardcastle v. Harris***, 170 S.W.3d 67, 80–81 (Tenn. Ct. App. 2004) (citing ***Branch v. Warren***, 527 S.W.2d 89, 91–92 (Tenn. 1975)). However, "trial courts are not required to grant such motions 'if the amendment would have been futile.'" ***Sallee v Barrett***, 171 S.W.3d 822, 830 (quoting ***Huntington Nat'l Bank v. Hooker***, 840 S.W.2d 916, 923 (Tenn. Ct. App. 1991)).

Here, even if we allow, *arguendo*, that the trial court should have allowed Mr. Spates the opportunity to amend his complaint to comply with the mandates of Tennessee Code Annotated Section 29-25-121, such amendment would only extend the statute of limitations by 120 days from the date of expiration. As discussed above, based upon Mr. Spates's own statements that he discovered his injuries on April 8, 2011, the statutory period would have expired, absent tolling, on April 9, 2012. Adding 120 days to the end of the initial statutory period would only extend the limitations period to August 6, 2012, which is 120 days from April 9, 2012. It is undisputed that Mr. Spates's complaint was filed on August 9, 2012. Accordingly, even with an additional 120 days, Mr. Spates's complaint was not timely. Therefore, we cannot conclude that the trial court erred in dismissing the complaint for failure to comply with the applicable statute of limitations.

## Indigent Status

From our reading of Mr. Spates's brief, it appears that the crux of his argument, concerning the trial court's denial of indigent status, is that the lower court: (1) failed to conduct a hearing on the question of indigency; and (2) having determined that Mr. Spates was not indigent, failed to notice him of that decision.

"It is well settled that a court speaks through its orders." ***In re Connor S.L.***, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *5 (citing ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977)). As set out in full context above, in its November 19, 2012 order, the trial court states that "the Court has previously found [Mr. Spates] to not be a pauper and the filing fee for this case has remained unpaid." Although the trial court notes its previous decision on Mr. Spates's indigent status, there is no indication that the trial court based the grant of Appellees's motion to dismiss on Mr. Spates's indigent status or on his

failure to pay filing fees.

It is well settled that a litigant commencing a civil action in a Tennessee court must file a cost bond and pay an initial filing fee. Litigants who are indigent may be excused from filing a cost bond by filing an affidavit stating that they are justly entitled to legal or equitable relief but are unable to bear the expense of the litigation because of their poverty. Tenn. Code Ann. § 20-12-127. Upon the filing of an appropriate affidavit of indigency, the costs are held in abeyance until the end of the litigation. *See* Tenn. Sup. Ct. R. 29 (stating that "any civil action may be commenced by a resident of this state without giving security as required by law for costs and without payment of litigation taxes due by filing the oath of poverty set out in the statute and by filing an affidavit of indigency as prescribed by court rule").

However, indigent persons are not excused from paying the initial filing fees required by Tennessee Code Annotated Section 8-21-401(a). In 1996, The Tennessee General Assembly specifically enacted Tennessee Code Annotated Section 41-21-807 to provide a procedure for collecting the required filing fee from inmates filing civil suits in state court. Tennessee Code Annotated Section 41-21-807(a) requires inmates to file certified copies of their trust fund account statements for the six months immediately preceding the filing of the petition. In addition, Tennessee Code Annotated Section 41-21-807(b)(1) provides:

> If an inmate brings a civil action or files an appeal in forma pauperis, the inmate shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect as a partial payment of any court fees required by law, an initial partial filing fee of twenty percent (20%) of the greater of the average monthly:
>
> (A) Deposits to the inmate's account; or
> (B) Balance in the inmate's account for the six-month period immediately preceding the filing of the complaint or notice of appeal.

This Court, in ***Freeman v. Tennessee Dept. of Probation and Parole***, No. M2002-00958-COA-R3CV, 2003 WL 1798080 (Tenn. Ct. App. April 7, 2003), held that a trial court may properly dismiss a civil action filed by a *pro se* inmate when the inmate fails to pay a portion of the initial filing fee as ordered by the court. ***Id***. at *3. However, in this case, Mr. Spates's action was not dismissed as a result of his failure to pay the required fees, but was (as discussed above) properly dismissed for failure to comply with the applicable statute of limitations. Accordingly, the trial court's determination that he was not indigent bears only upon the timing and mechanism for the payment of his filing fees. As outlined above,

Tennessee Code Annotated Section 41-21-807(b)(1) mandates that an inmate is "required to pay the full amount of a filing fee," despite bringing his or her case "*in forma pauperis*." Consequently, this statute does not relieve an indigent inmate from the obligation to pay the initial fee by virtue of being indigent; the indigent prisoner is simply offered an alternative procedure by which to pay. Thus, regardless of whether the trial court found him to be indigent and regardless of whether he received notice of the court's decision, under Tennessee Code Annotated Section 41-21-807, Mr. Spates would not be relieved of his obligation to pay the filing fees. Because Mr. Spates is obligated to pay the filing fee regardless of his indigency status, any issue Mr. Spates' asserts concerning the trial court's failure to provide him with adequate notice is moot.

For the foregoing reasons, we affirm the order of the trial court, dismissing Mr. Spates's complaint. The case is remanded for further proceedings, including, but not limited to, collection of fees. Costs of the appeal are assessed against the Appellant, Tyrone Spates. Because Mr. Spates is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE